Syllabus.

# JOHN PRICE

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt.Vernon January 21, 1890.*

1. CRIMINAL LAW—*self-defense—threats—apprehension of danger.* An instruction in a capital case, to the effect, that if a person is *threatened* in such a manner as to induce in him a reasonable and well grounded belief that he is in danger of losing his life or of suffering great bodily harm he may kill the one so threatening him, whether the danger is real or only apparent, is erroneous,—for while the danger at the time the mortal blow is given need not be real, it must be apparently imminent, urgent and pressing.

2. CHANGE OF VENUE—*in capital, and other criminal cases.* Under existing legislation, and since the revision of 1874, there is no distinction between capital and other criminal cases in respect to the right of the defendant to a change of venue on the alleged ground of prejudice on the part of the inhabitants of the county.

3. SAME—*discretion of the court.* The discretion which the court may exercise, under section 22 of the act, in granting or refusing the petition, is a sound legal discretion, subject to review in this court, in case it may appear to have been abused.

4. SAME—*prejudice of the inhabitants—denied by the prosecution—an issue to be tried.* The court is not bound to grant a change of venue, in any case, on the plea of the prejudice of the inhabitants. Such plea must be established by affidavits, and the prosecution may deny the grounds alleged, and support such denial by counter-affidavits. The action of the court in granting or refusing of a motion for a change of venue is now a judicial determination.

5. On motion for a change of venue on the ground mentioned, upon which is based the party's belief of his inability to have a fair and impartial trial, the State's attorney's denial of the facts alleged is not required to be under oath. His denial serves no other purpose than to form an issue, and until supported by counter-affidavits does not refute the prisoner's statements.

6. CONTINUANCE—*for time to prepare for trial.* There will be no error in overruling a motion for a continuance by one charged with crime, on the ground of a want of time to prepare for trial, when it appears that the case is set for trial some two weeks after the time of making the application, and it is not shown that this was not ample time in which to prepare the case.

7. SAME—*departure of witness after trial commenced.* To avoid a continuance in a criminal case, the prosecution produced one of the defendant's witnesses, and the trial was begun, but the witness absented himself before the evidence for the prosecution was closed. The defendant entered his motion for a continuance, and asked time to prepare a showing, which the court refused to allow: *Held,* that the court erred in refusing to allow the defendant time to make his showing on the motion, it being practically to refuse to entertain the motion.

8. Where an important witness for the defendant in a capital case leaves the court after the trial has commenced, it will be the duty of the defendant to satisfy the court that the absence of the witness was not authorized by him, and other facts required in an application for a continuance, in order to entitle himself to a continuance, when he is afforded an opportunity to do so. If the court refuses time in which to make such showing, all the defendant can do is to except to the ruling, and urge it as a ground for a new trial.

9. SAME—*counter-affidavits.* There is no law in this State for the filing of counter-affidavits on a motion for a continuance, and it is error to allow the same; but where the benefit of a continuance is obtained by setting the case over some time for trial, the error will not reverse.

WRIT OF ERROR to the Circuit Court of Gallatin county; the Hon. CHAUNCEY S. CONGER, Judge, presiding.

Messrs. PILLOW & PARISH, for the plaintiff in error:

By bringing himself within the statute, the defendant was entitled to a change of venue as a matter of right. The constitutions of the United States and of this State guarantee a fair and impartial trial. Const. of U. S. art. 6 of amendments; Const. of 1870, art. 9.

The act of 1861, relating to change of venue in criminal cases, relates solely to offenses not punishable with death, and left the law as to capital cases unchanged. *Perteet* v. *People,* 65 Ill. 230; *Rafferty* v. *People,* 66 id. 118; 72 id. 37.

If the law allows the denial of the petition, then we say that the State's attorney's denial and counter-affidavits are insufficient to make an issue. The counter-affidavits should deny the facts stated, and not conclusions.

If the court has a discretion, it is a judicial one, which may be reviewed for an abuse. *Barrows* v. *People,* 11 Ill. 121; *Barron* v. *People,* 73 id. 256.

A defendant should not be compelled to go to trial, after an indictment has been found, until he has had a reasonable time to prepare for his trial. *Dunn* v. *People,* 109 Ill. 635; *Dacey* v. *People,* 116 id. 555.

Where a party is surprised by the unauthorized withdrawal of his witness after the trial has commenced, defendant may apply for a continuance or postponement of the trial; and should the court unadvisedly refuse the application, such refusal may be made the ground of an application for a new trial. 2 Wharton on Crim. Law, sec. 2930; *Colton* v. *State,* 4 Tex. 260.

If a reasonable man would have held the danger was apparent, then it will be treated as apparent. *Oder* v. *Commonwealth,* 80 Ky. 32; *People* v. *Morine,* 61 Cal. 364.

The law makes the defendant the judge of the apparent danger. His standpoint is the one to be looked to. *Campbell* v. *People,* 16 Ill. 17; *Schnier* v. *People,* 23 id. 17; *Maher* v. *People,* 24 id. 241; *Roach* v. *People,* 77 id. 25; *Steinmeyer* v. *People,* 95 id. 383.

As to the right to take life in self-defense, see *Granger* v. *State,* 5 Yerg. 459; *Commonwealth* v. *Wilson,* 1 Gray, 337; Wharton on Crim. Ev. sec. 757; *Rex* v. *Thurburne,* 1 Den. C. C. 388.

Mr. GEORGE HUNT, Attorney General, Mr. W. R. MCKERNAN, State's Attorney, and Mr. D. M. KINSALL, for the People:

The statute relating to change of venue applies alike to all classes of crimes, and gives the prosecution the right to deny the facts relied on for a change, and sustain such denial by counter-affidavits. *Dunn* v. *People,* 109 Ill. 635.

The court having a discretion in the matter, error is not assignable on refusal to grant a change. *Findley* v. *State,* 5

Blackf. 576; *Sumner* v. *State,* id. 579; *Barron* v. *People,* 73 Ill. 257; *Hall* v. *Barnes,* 82 id. 228.

As the record shows a trial by a fair and impartial jury, no reversal would follow if it was error to not grant the change. *Mix* v. *People,* 122 Ill. 641; *Goodwin* v. *Goodwin,* 65 id. 497; *Myers* v. *Walker,* 31 id. 353; *Spies* v. *People,* 122 id. 1.

The complaint that counsel did not have time to prepare for a proper defense, in view of the fact that a trial was not had until the 12th day of March, 1889, certainly can be of no weight when the whole record is considered upon this point. It is no error to refuse a continuance on the ground that defendant's counsel had been so occupied with other cases that he had not sufficient time and opportunity to prepare the case for trial. *Dunn* v. *People,* 109 Ill. 635.

A continuance will not be granted on account of the absence of a material witness living in a foreign State, unless the affidavit shows that such witness could be procured at a future term. *Perteet* v. *People,* 70 Ill. 171; *Eubanks* v. *People,* 41 id. 486.

It is no error to refuse a continuance where a witness is beyond the jurisdiction of the court. Wharton on Crim. Pl. and Pr. sec. 587; *United States* v. *Gibert,* 2 Sumn. 19; *State* v. *Files,* 3 Brev. 304.

Threats of personal injury, or even against the life, will not justify taking the life of the party making them. Wharton on Crim. Law, sec. 487; *Gilmore* v. *People,* 124 Ill. 380; *Forbes* v. *Snyder,* 94 id. 374; *Hughes* v. *People,* 116 id. 330.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

At the last February term of the Gallatin circuit court, John Price, the plaintiff in error, was tried, convicted, and sentenced to be executed, for the crime of murder,—hence this writ of error. Numerous errors are assigned on the record, but a reversal is urged on three grounds only, viz.: First, the circuit court erred in refusing to grant the prayer of the defendant's

petition for a change of venue; second, the circuit court erred in overruling the defendant's several motions for a continuance; and third, the court improperly modified the seventh, eighth and tenth instructions asked by the defendant.

The facts material to a consideration of the first of these propositions are as follows: The indictment was returned on the 6th of February, 1889, and on that day counsel for defendant gave notice that they would, on the morning of the 8th instant, present a petition on behalf of defendant "for a change of venue to a foreign county," and accordingly, on the last named day, the sworn petition of defendant, stating that he feared he would not receive a fair and impartial trial in said county of Gallatin, because of the prejudice of the inhabitants thereof against him, setting forth the facts on which he founded his belief, was filed, together with a large number of affidavits by citizens of said county supporting the allegations of said petition. The prosecuting attorney of said Gallatin county thereupon filed a general denial of the "facts alleged in defendant's petition," and in support of the same he also filed a large number of affidavits by citizens of said county. On the 12th of the same month the court denied said petition, and the defendant, by his counsel, duly excepted.

The first ground upon which this ruling of the court below is questioned is, that in a case punishable with death, when the defendant has made oath that he fears that he will not receive a fair and impartial trial in the court in which the case is pending, because of the prejudice of the inhabitants of the county in which the court is held, he is entitled to a change of venue as a matter of right, and that no denial of the petition by the prosecuting attorney, and no counter affidavits, are allowable. In support of this position, it is insisted that our present statute on the subject of change of venue in criminal cases, approved March 25, 1874, is but a re-enactment of the law of 1845, as modified by the amendment of 1861 on the same subject.

The constitutional right of one charged with a crime, to a trial by an unprejudiced, impartial jury, argued by counsel for plaintiff in error, is not here involved.    That right is conceded; but how and by whom shall it be determined when a prisoner can have that right in the county in which the indictment is pending, is the question.    Prior to the amendment of 1861 that question was left to the defendant, alone.    By making oath that he feared that he could not have a fair and impartial trial on account of the prejudice of the inhabitants, a change of venue followed as a matter of right.    He, alone, was made the judge.    The amendment of 1861 qualified that right in all cases not punishable with death, by requiring him to set forth in his petition, not only that he entertained such fears, but also to state the grounds of his belief, and the facts which induced him to believe that such prejudice existed against him, and by authorizing the State's attorney to controvert the facts so stated.    This amendment, in all cases to which it was applicable, made the court the judge as to whether or not a fair and impartial trial could be had without a change of the venue.

The present statute (chap. 146) is neither an amendment to nor re-enactment of former statutes.    It is complete and independent within itself, and abolishes the distinction between cases punishable with death and all others, which was made by the act of 1861.    The language of section 18, chapter 146 is, "where *any* defendant    *    *    *    shall fear that he will not receive a fair trial,    *    *    *    the court shall award a change of venue, *upon the application of the defendant, as hereinafter provided.*"    Section 20 provides how that application shall be made.    Section 22 is as follows: "When the cause of the change of venue is the prejudice of the inhabitants of the county against the defendant, his petition shall set forth the facts on which he founds his belief, and the attorney on behalf of the People may deny the facts stated in the petition, and support his denial by counter-affidavits; and the judge

may grant or deny the petition, as shall appear to be according to the right of the case." Taking these sections together, the intention of the legislature to make the question as to when a change of venue shall be granted, one of judicial determination in all cases, is so manifest that nothing is left for construction or argument. As well might it be said that section 22 does not apply to a case of burglary or arson, as that it has no application to cases of murder. Our former decisions, holding that a change of venue was a matter of right guaranteed a defendant in a criminal case, on proper application, without his stating the reasons or facts upon which his fear was based, will be found to rest on statutes in force prior to 1874, and that so far as that right is held to continue in capital cases after the amendment of 1861, the decisions simply recognize the express exception made therein.

It is next contended, that if said section 22 is held to apply to cases of murder, still the denial of the State's attorney in this case is not a compliance therewith, for the reason that it is too general and indefinite, failing to specifically deny the facts stated in the petition. We fail to find in the record any objection to the form or substance of that denial, made in the court below; but if it were otherwise, we think the statute was substantially complied with. The denial of the prosecutor is not required to be under oath. It serves no other purpose than to form an issue on the petition, and until it is supported by counter-affidavits, it in no way tends to refute the facts sworn to by the prisoner in his petition.

It is finally insisted on this branch of the case, with much earnestness, that on all the facts shown, defendant was justly entitled to a change of venue, and it was error to refuse it. The discretion which the court may exercise, under section 22, in granting or refusing the prayer of the petition, is undoubtedly a sound legal discretion, subject to review in this court; but we are not prepared to say that this record shows such an abuse of that discretion as that the decision of the court below

on that branch of the case should be held error. It is undoubtedly true, that in the city of Shawneetown and its immediate vicinity there was, at the time of the homicide, a high degree of excitement among the people, and a manifestation of strong prejudice against the prisoner; and there is much reason to fear that that feeling had not wholly subsided when the petition for a change of venue was filed. Nor do we lose sight of the known fact that a violent feeling of prejudice in the public mind may operate so as to deprive a prisoner of a fair and impartial trial, even where an unbiased jury can be obtained; yet, in view of the numerous affidavits filed in support of the prosecutor's denial, made by citizens from the various localities in the county, we can not say that the trial judge was not justified in holding that the defendant's fears that he could not have a full, fair and impartial trial in Gallatin county, were not well founded.

On the overruling of the petition for a change of venue, the prisoner entered his motion for a continuance to the next term. This motion was based on his own affidavit and that of his attorneys, to the effect, that owing to his having been confined in the jail of a foreign county, and refused the privilege of consulting with counsel and friends, and because after he was returned to said Gallatin county the sheriff denied him the privilege of consulting with his said attorneys, (this last fact being sworn to by the defendant only,) and for want of time since the return of the indictment into court, his attorneys being necessarily employed in the performance of other professional duties in said court, he had been wholly unable to properly prepare his defense. The court, over the objection of counsel for the defendant, permitted the sheriff to make a counter-affidavit denying that he had refused to permit the defendant to consult with his said attorneys. This motion was entered on the 12th day of February, and was passed upon and overruled on the 16th of the same month. The case was then set down for trial on the 26th, and the court adjourned

to that date. On said last named date, the case being called
for trial, the defendant again moved for a continuance to the
next term, on account of the absence of a material witness
on his behalf, named John Suggs. This motion was sup-
ported by the affidavit of the defendant, which was held by the
court to be sufficient to entitle him to a continuance. The
prosecution thereupon asked time in which to bring said Suggs
into court, which was allowed. There seems to have been no
objection or exception to this action of the court. On the
afternoon of the same day, the attorneys for the People did
produce in court said witness, and thereupon both parties an-
nounced themselves ready for trial. A jury having been im-
paneled and sworn, and the State having closed its evidence,
the witness Suggs was again found to be absent. Thereupon
counsel for the prisoner entered their motion for a continu-
ance on account of such absence, and asked time to prepare
and file the affidavit of defendant in support of said motion.
The court overruled the motion, to which ruling an exception
was duly taken.

There was no reversible error in overruling the first motion
for a continuance, because by the postponement of the trial
the defendant was allowed further time to prepare his defense,
and there is no complaint or showing that such additional
time was not ample. In fact, the trial was not entered upon
until the 12th of March following. There is no authority of
law for the filing of counter-affidavits on a motion for contin-
uance, in this State, and it was error to permit the prosecution
to do so in this case; but for the reason stated, no injury re-
sulted to the defendant thereby. A defendant in every crim-
inal case is entitled, under the law, to a reasonable time, and
full opportunity to prepare for his trial, and that right should
always be guaranteed him. In this case, had the prisoner
been compelled to proceed to trial immediately, upon his mo-
tion for continuance being denied, he would, under the facts
shown by his affidavit and that of his attorneys, had just

cause of complaint. But whether his trial was continued generally, or to a future day of the same term, could be a matter of no legal consequence to him, provided such continuance afforded him reasonable time to prepare his defense and secure the attendance of his witnesses, and, as we have said, no complaint is made that such time was not allowed him. The ruling of the court on the second motion for continuance is not in question here, but the refusal to entertain the third request to continue, and grant time in which to prepare and file the defendant's affidavit in support thereof, is urged as error.·

In *Cotton* v. *The State*, 4 Texas, 260, it was said: "When a party has announced himself ready for trial, it is generally too late to move for a continuance. But when he is surprised by the unauthorized withdrawal of his witnesses after the trial has commenced, the practice is to apply for a continuance or postponement of the trial; and, should the court unadvisedly refuse the application, such refusal may be made the ground for a new trial,"—citing 2 Bailey, 576, 1 id. 25, 4 Day, 471, and 3 Wend. 377. The rule here announced is quoted with approval by Wharton in his work on Criminal Law, (vol. 3, sec. 2930, 6th rev. ed.) We have found no authority to the contrary, and the rule seems to be reasonable and in consonance with justice and humanity.

It is said, however, that the defendant in this case failed to bring himself within its requirements, and can not therefore invoke it; that he did not show that the witness Suggs was not absent the second time with his consent, nor did he show that he could procure his attendance at the next term. It was clearly the duty of the defense to satisfy the court that the absence of the witness was unauthorized by him; that he was in fact surprised by such absence, and to show all other facts, which would have been necessary on an application for a continuance on account of his absence, before entering upon the trial. Here, however, it must be observed that the request of his counsel for time to prepare and file his affidavit in sup-

port of his motion was denied. The trial being in progress, the refusal to grant this request deprived him of the opportunity to do the very thing which it is now said he should have done. All that he or his counsel could do, under these circumstances, was to except to the ruling of the court and urge it as ground for a new trial. The affidavit of the defendant, previously filed, did show the materiality of the evidence of Suggs, diligence to procure his attendance, and that, although a non-resident of the State, he would be able to procure his attendance at the next term of the court. As before stated, the court, in passing upon that affidavit, had held it sufficient to entitle the defendant to a continuance. It also appears from the record, that the witness was within the reach and so far under the control of the prosecution, that it was able to bring him into court within a short time after that affidavit was passed upon by the court, without process. On his second absence, no offer was made to reproduce him. We are not to be understood as intimating that he was at any time absent by the procurement of the prosecution, but the circumstances alluded to appearing from the record, tend to show that the witness was not absent with the knowledge and consent of the prisoner, and that he was taken by surprise by his absence. The fatal error, however, in the ruling of the court, was in refusing to allow the counsel for defendant a reasonable time to make affidavit in support of their motion,—in effect, refusing to entertain the motion.

The modification of defendant's seventh, eighth and tenth instructions was proper. They were each intended to instruct the jury as to the rights of the accused under the law of self-defense. The seventh and tenth, as asked, lay down the rule that if a person is *threatened* in such a manner as to induce in him a reasonable and well grounded belief that he is in danger of losing his life or suffering great bodily harm, he may kill the one so threatening him, whether the danger is real or only apparent. The eighth, as asked, required neither

acts nor threats as a foundation for such belief. They were each so modified as to make it necessary that the defendant's belief of danger should arise from "demonstrations of the deceased at the time" the mortal blow was struck. Under the evidence they might well have been refused, but as modified and given, they were more favorable to the defendant than he had a right to ask. Without the modification, they would have been highly misleading and erroneous. It was shown by the evidence, that two days prior to the homicide, and again on that day, deceased made violent threats against the defendant. These instructions, without the modification, would have justified an acquittal, if the jury believed, from the evidence, that such threats induced in the mind of the defendant a belief that the deceased would carry his threats into execution, although at the time of the killing there was no *overt* act on his part,— no attempt whatever to do the prisoner bodily harm or take his life. It will not be seriously contended that such is the law of this State. Our statute expressly provides that "if a person kill another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life or prevent his receiving great bodily harm the killing of the other was absolutely necessary." It is true the danger need not be real, but it must be apparently imminent, urgent and pressing. *Gilmore* v. *The People*, 124 Ill. 380; *Hughes* v. *The People*, 116 id. 330; *Cummins* v. *Crawford*, 88 id. 312; *Forbes* v. *Snyder*, 94 id. 374.

For the error indicated, the judgment of the circuit court is reversed, and the cause remanded.          *Judgment reversed.*

BAKER and BAILEY, JJ.:

We concur in the opinion and conclusion of the majority of the court, except so far as relates to the action of the court below denying the defendant's petition for a change of venue. Sections 18 to 33 of chapter 146 of the Revised Statutes relate to changes of venue in criminal cases, and, as has been

uniformly held by this and other courts, in respect to other statutes relating to crimes and their punishment, said sections should be construed strictly and literally in favor of the accused. Section 18 provides that, when any defendant in an indictment shall fear that he will not receive a fair and impartial trial in the court in which the case is pending, because the inhabitants of the county are prejudiced against him, the court shall award a change of venue, upon the application of the defendant as provided in the following sections. Section 22 is as follows:

"When the cause for a change of venue is the prejudice of the inhabitants of the county against the defendant, his petition shall *set forth the facts* on which he founds his belief, and the attorney, on behalf of the people, may *deny the facts stated in the petition* and support his denial by counter affidavits; and the judge may grant or deny the petition as shall appear to be according to the right of the case."

The above section was inserted in the revision of 1874 as a new provision, so far as prosecutions for murder are concerned the statute up to that time making it imperative upon the court in such cases to award a change of venue whenever the defendant merely alleged by his petition that he feared that he would not receive a fair and impartial trial in the county where the indictment was pending on account of the prejudice of the inhabitants of the county. By said section the right to a change of venue upon the bare statement in the petition is taken away, and the burden is imposed upon the defendant of meeting and maintaining on his part two issues. The first is an issue of law, viz, whether the facts stated in the petition as the basis of his belief are sufficient, if true, to raise a reasonable apprehension that, on account of the prejudice of the inhabitants of the county, he will not receive a fair and impartial trial, and, second, an issue of fact, viz, whether the facts stated by him in his petition as the foundation of his belief really exist. If either of these issues is decided against him his petition

must be denied, but if both are decided in his favor his right, to a change of venue becomes absolute.

It is manifest from the language of the statute that the issue of fact which the attorney for the people is permitted to raise is not, whether the prejudice which the defendant apprehends exists in reality, but whether the facts stated in the petition and upon which the defendant founds his belief that the inhabitants of the county are prejudiced against him are true. The defendant is required to state in his petition the facts upon which he founds his belief, and the attorney for the people is, permitted to "deny the facts stated and support his denial by counter affidavits."

It is clear that the facts stated in the petition for a change of venue in this case were sufficient, if true, to raise in the mind of a reasonable man a well grounded apprehension that, on account of popular prejudice, the defendant would not receive a fair and impartial trial in Gallatin county, where the indictment was pending. The homicide charged was committed in Shawneetown, the county seat, principal city and commercial center of that county, and the petition shows, among other things, the publication, shortly after said homicide was committed, in at least three different newspapers published in Shawneetown and having a circulation throughout said county, of accounts of the affair, describing the offense in strong and denunciatory language, and stating the facts in such way as to make it appear to be an unprovoked and brutal murder of a white man by a negro. The petition further shows that after the homicide, the feeling against the defendant in Gallatin county, and particularly in and about Shawneetown was very bitter; that after his arrest, a large and excited mob of citizens of Gallatin county followed him to the county jail clamoring for his blood and preparing to take him out and lynch him; that to save him from mob violence, the sheriff was compelled to convey him secretly and by night to the jail of another county, and keep him secretly confined until it be-

came necessary to return him to Gallatin county for trial, and that the sheriff and his deputy were compelled to circulate false reports as to the defendant's whereabouts in order to ward off and defeat the mob violence with which he was threatened; that on the day of the homicide, one Peter Hite, a negro, made a remark on the streets of Shawneetown justifying the defendant, and that for such remark he was set upon by a mob of forty or fifty persons, and but for the timely interference of the sheriff, would have been killed; that various individuals of prominence and influence in said county, whose names were given, had in various public places in said county, and on numerous occasions, stated in the hearing of large numbers of the citizens of the county that the defendant ought to be hung. These are the more important, though only a part, of the facts stated in the petition as the foundation of the fear on the part of the defendant that he would not receive a fair and impartial trial in said county.

The attorney for the people filed a large number of counter affidavits, sworn to by persons living in different parts of Gallatin county, said affidavits being generally to the effect that in the opinion of the affiant and so far as he knew, there was no such prejudice in the minds of the people of said county as would interfere with a fair and impartial trial of the defendant. But very little attempt was made to disprove any of the specific facts set out in the petition. It need not be held that counter affidavits of this character were improper, or that they were wholly immaterial upon the hearing of the matter before the court, but it must be admitted that their bearing upon the issue of fact to be tried was very remote. The issue was not whether the prejudice which the defendant apprehended in fact existed, but whether the facts existed upon which his apprehensions were based. The attempt to disprove those facts was, on the whole, a failure, and as said facts were not disproved they must be deemed to have been true, and if true, the defendant was entitled to a change of venue. But

it is claimed that the affidavits, taken as a whole, warranted the conclusion that, while there was prejudice against the defendant in Shawneetown and vicinity, there was little if any in the minds of the inhabitants of the other parts of the county, and that there was a sufficiently large population in the county to draw from to obtain an unprejudiced jury, and that a fair trial in the county was therefore possible. This reasoning is specious and delusive. The trial, if held in Gallatin county must be held at Shawneetown, and therefore in the immediate atmosphere of the prejudice which the defendant feared. But waiving that question, and admitting that the prejudice complained of was wholly confined to Shawneetown and its vicinity, what machinery has the law provided for selecting a jury from one part of the county to the exclusion of the other? The regular panel must be drawn from all parts of the county indiscriminately, and after that panel had been exhausted, as it doubtless soon would be in a trial of this character, what surety was there that the sheriff, in executing special venires, would be disposed to confine his selection to those portions of the county where no prejudice existed, and if he saw fit not to do so, what power would the court have to control his action in that behalf? The population where the prejudice is shown to have existed was near at hand and that which was impartial remote, and in the ordinary course of things the sheriff would be more likely to find the jurymen to be summoned among the former than the latter. The fact that a sufficient number of unprejudiced men were living in the county to form an unprejudiced jury was of little significance, so long as the law provided no certain means of selecting them and avoiding the selection of those who are shown to be prejudiced.

We are of the opinion that, under all the facts shown the venue should have been changed, and that it was error to deny the defendant's petition in that behalf.