Argued 20 November, decided 15 December, 1902.

## STATE *v.* HUMPHREYS.

[70 Pac. 824.]

INFORMATION—LARCENY BY BAILEE—SURPLUSAGE—DUPLICITY.

1. Among the general rules recognized in this state, for construing indictments and informations are, that allegations not necessarily descriptive of the offense may be rejected as surplusage, if the charge is complete without them, and that, where several acts are enumerated alternatively, the doing of each one being prohibited under a given penalty, they may be charged conjunctively as one offense, when not repugnant to each other.

Both these rules are thus applied in this case: Hill's Ann. Laws, § 1771, provides that any person being a bailee, who embezzles or converts to his own use, or fails, neglects or refuses to deliver, keep, or account for, property placed in his care according to his trust, shall be guilty of larceny. Section 1273 requires that indictments must charge but one offense, and in one form only. *Held,* that an information alleging that defendant, being a bailee of wheat for hire "did * * fail, neglect and refuse to keep or account for said wheat according to the nature of his trust," by stealing, embezzling and converting the same to his own use, does not charge more than one crime by the use of the word "or", for the quoted words (which include the "or") may be omitted without impairing the charge of larceny; and the remainder of the information charges defendant with "taking, stealing and carrying away, *and* embezzling *and* converting said wheat," which is a permissible form of charging a violation of a statute disjunctively worded.

INFORMATION — DEGREES OF LARCENY — SURPLUSAGE.

2. Even if an information does charge several offenses, a conviction of any one of them should be sustained, if they are all of the same class and differ only in degree.

LARCENY BY WAREHOUSEMAN — ALLEGING PAYMENT OF CHARGES.

3. An information against a warehouseman for larceny by stealing and converting property deposited with him need not allege a payment or tender of the storage charges, for the gist of the offense is not a failure to return the deposited property on demand, but an unlawful conversion.

LARCENY BY BAILEE — STATUTES.

4. A warehouseman who gives to a depositor receipts not in the form prescribed by Hill's Ann. Laws, §§ 4201–4207, regulating warehousemen, may be prosecuted for a conversion of the bailed property under section 1771, defining and punishing larceny by bailee, instead of under the special provisions regulating warehousemen.

CHANGE OF VENUE — ABUSE OF DISCRETION.

5. The right to change the venue of a trial is one confided by statute to the discretion of the trial judge, to be carefully exercised to the end that all interested parties may be justly treated; and in the present instance it does not appear that the trial judge abused the discretion reposed in him.

CRIMINAL INTENT AS AN ELEMENT OF LARCENY.

6. While it is a general rule that the state must prove a criminal intent in all cases of felony, it is not necessary to prove it by direct testimony, the jury being permitted, upon proof of the overt act, to deduce the intent from a consideration of the surrounding circumstances.

WAREHOUSE CONTRACT — SALE — BAILMENT.

7. A placing of property in a warehouse under an agreement to pay storage, but with the expectation of selling it to the best purchaser, is a bailment and not a sale, though the depositor was willing to take the market price in cash rather

than the property, if the warehouseman should prefer that method of settlement upon a demand being made for the property.

REMARKS BY COURT—

8. Statements made by a trial judge during an argument by counsel on a proposition of law, illustrating a hypothetical case, and accompanied by such a statement as, "I think that is the law; I do not intimate that the defendant did any of those things, that is for the jury to determine," is not an invasion of the province of the jury, or an expression of opinion as to the facts in issue, or the weight of evidence: *State* v. *Lucas*, 24 Or. 168, distinguished.

EXAMPLE OF PROPER CROSS-EXAMINATION—

9. A witness having testified that the name of a stated person had been signed to certain papers by some of his employés, it is within the limits of proper cross-examination to ask the witness if such employés did not have authority to sign the name of their employer as they had done.

From Marion : GEORGE H. BURNETT, Judge.

A. M. Humphreys appeals from a judgment sentencing him for larceny.                                        AFFIRMED.

For appellant there was a brief over the names of *William H. Holmes, Samuel T. Richardson,* and *I. N. Maxwell,* with an oral argument by *Mr. Holmes* and *Mr. Maxwell.*

For the state there was a brief and an oral argument by *Mr. Julius N. Hart,* District Attorney, and *Mr. John H. McNary.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

The defendant, A. M. Humphreys, was accused by the district attorney of the crime of larceny by bailee, alleged in the information to have been committed as follows:

"The said A. M. Humphreys, on the 30th day of March, 1901, in the County of Marion and State of Oregon, then and there being the bailee with hire of 204 bushels of wheat, the same being then and there the personal property of one E. T. Hall, of the value of $102, did then and there wrongfully, unlawfully, and feloniously fail, neglect, and refuse to keep or account for the said wheat according to the nature of his trust, the said wheat having been theretofore delivered and intrusted to the said A. M. Humphreys, as such bailee, by the said E. T. Hall, as bailor, by then and there wrongfully, unlawfully, and feloniously taking, stealing, and carrying away, and embezzling and converting said wheat to his, the said A. M.

Humphreys', own use, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

A demurrer on the following grounds: "First, that the information in this cause does not substantially conform to the requirements of Chapter VIII of the Criminal Code of the State of Oregon; second, that more than one crime is charged in this information; third, that the facts stated in the information in this cause do not constitute a crime; fourth, that the information in this cause contains matter, which, if true, would constitute a legal justification and excuse of the crime charged and other legal bar to the action,"—having been interposed and overruled, the defendant entered a plea of not guilty, and, a trial being had, he was found guilty as charged, and sentenced to imprisonment in the penitentiary for the term of two years, from which judgment he appeals.

The information having alleged that the defendant "did then and there wrongfully, unlawfully, and feloniously fail, neglect, and refuse to keep or account for the said wheat," it is contended by his counsel that the use of the word "or" in the language quoted violates Section 1273, Hill's Ann. Laws, which provides that the indictment must charge but one crime, and in one form only. The statute which the defendant is charged with violating, so far as deemed applicable herein, is as follows: "If any bailee, with or without hire, shall embezzle, or wrongfully convert to his own use, or shall secrete, with intent to convert to his own use, or shall fail, neglect, or refuse to deliver, keep, or account for, according to the nature of his trust, any money or property of another delivered or intrusted to his care or control, and which may be the subject of larceny, such bailee, upon conviction thereof, shall be deemed guilty of larceny, and punished accordingly ": Hill's Ann. Laws, § 1771. If the information contained no other aver-

ments of the facts constituting the commission of the alleged crime, the legal principles insisted upon would probably be applicable, for the rule is nearly universal that, when a statute enumerates several acts in the alternative, the doing of any of which is subjected to the same punishment, all such acts, when not repugnant to each other, may be charged cumulatively as one offense, by using the copulative "and" where "or" appears in the statute; but where the latter word is so used in the sense of "to wit," or as indicating that the terms preceding and following are synonymous, it is unnecessary to observe the distinction in the manner of enumerating the several acts constituting the alleged crime, in which case the disjunctive "or" may be used in the information or indictment in the same manner as it appears in the statute: 10 Ency. Pl. & Pr. 490, 536; *State* v. *Carr*, 6 Or. 133; *State* v. *Bergman*, 6 Or. 341; *State* v. *Dale*, 8 Or. 229. Our statute prescribing the method of alleging facts constituting the commission of crimes contains the following provisions: "All the forms of pleading in criminal actions heretofore existing are abolished: and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code": Hill's Ann. Laws, § 1266. "The indictment must contain,— * * 2. A statement of the acts constituting the offense, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended": Hill's Ann. Laws, § 1268. "The indictment must be direct and certain, as it regards,—1. The party charged; 2. The crime charged; and, 3. The particular circumstances of the crime charged when they are necessary to constitute a complete crime": Hill's Ann. Laws, § 1271.

In applying these liberal rules to the method of charging the acts constituting the commission of crimes, it is

quite well settled that an allegation in an indictment which is not necessarily descriptive of the offense may be regarded as surplusage and rejected, without vitiating the pleading, if enough remains to constitute a valid charge : 10 Ency. Pl. & Pr. 530 ; *Burchard* v. *State,* 2 Or. 78 ; *State* v. *Horne,* 20 Or. 485 (26 Pac. 665); *State* v. *Lee,* 33 Or. 506 (56 Pac. 415). Applying this rule to the averments of the information, we believe that the following part thereof was not descriptive of what was legally essential to the charge, and might properly be stricken therefrom as surplusage, without vitiating the pleading, to wit : "Did then and there wrongfully, unlawfully, and feloniously fail, neglect, and refuse to keep or account for the said wheat according to the nature of his trust," the remaining averments being descriptive of the acts constituting a violation of the statute, the material part of which, so far as this information is concerned, is as follows : "If any bailee * * shall embezzle, or wrongfully convert to his own use, * * any * * property of another delivered or intrusted to his care or control, * * such bailee, upon conviction thereof, shall be deemed guilty of larceny, and punished accordingly": Hill's Ann. Laws, § 1771. It will be observed that the parts of the statute last quoted enumerate several acts in the alternative, the doing of any of which is deemed larceny, and a conviction thereof subjects the offender to the punishment prescribed for the commission of that crime. It will be remembered that, omitting the surplus words of the information, it charges the commission of embezzlement and conversion of the wheat delivered to the defendant as bailee cumulatively as one offense, but, the pleader having adopted the copulative "and" where the disjunctive "or" occurs in the statute, the information conforms to the rule prescribed.

2. It is urged in defendant's behalf that the information charges the commission of three distinct offenses, to wit,

larceny by bailee, embezzlement, and simple larceny, and that, having interposed a demurrer on the ground of the duplicity, the court erred in overruling it. If it be assumed that these several crimes are charged by the information, they are generic in character, and differ only in degree of aggravation, in which the greater necessarily includes the less, and, as each is deemed larceny by the statute, and a bailee convicted thereof punished accordingly, and, as the value of the property alleged to have been taken, embezzled, and converted, is stated, it follows that a verdict of guilty as charged in the information renders the offender subject to the punishment prescribed for the commission of grand larceny: *State* v. *Hanlon,* 32 Or. 95 (48 Pac. 353); *State* v. *Savage,* 36 Or. 191 (60 Pac. 610, 61 Pac. 1128). In *State* v. *Thompson,* 28 Or. 296 (42 Pac. 1002), the defendant having been charged as "bailee and trustee" of certain property, which it was alleged he feloniously embezzled and unlawfully converted to his own use, in violation of Hill's Ann. Laws, § 1771, it was contended in his defense that the indictment charged two offenses, to wit, larceny by bailee and conversion by trustee; but it was held that the point insisted upon was without merit, Mr. Chief Justice BEAN saying: "The objection to the indictment is untenable. It is in the language of the statute, and does not charge more than one crime."

3. In the case at bar it was not alleged that the compensation which the defendant was to receive for his care of the property had been paid or tendered; but, as he was charged as bailee of wheat for hire, it is contended that the information does not state facts sufficient to constitute a crime, and that, a demurrer having been interposed on that ground, the court erred in not sustaining it. In overruling the demurrer the court must have treated as unnecessary that part of the information hereinbefore ad-

verted to as surplusage, and, this being so, the averment
that defendant was a bailee for hire became immaterial,
and might also have been rejected for the same reason.
If the gravamen of the action had been an alleged failure
to account for the wheat of which the defendant was the
bailee for hire, an averment of the payment or tender of
the compensation agreed upon for its care might possibly
have been necessary; but the information having alleged
that he feloniously took, stole, carried away, embezzled,
and converted said wheat to his own use, it was unneces-
sary to allege a payment or tender of the compensation
which he was to have received.   Thus, in *State* v. *Rieger*,
59 Minn. 151 (60 N. W. 1087), it was held to be unneces-
sary to allege in an indictment a tender of a warehouse
receipt, or to aver a demand for the return of the grain
for the deposit of which the receipt was issued, Mr. Justice
MITCHELL, saying: "It can hardly be necessary to add
that, if defendant had unlawfully shipped out this wheat
contrary to the provisions of section six, the offense was
complete without any tender of the receipt or demand for
the grain by the owner.   The gist of the offense charged
is the unlawful disposition of the grain, and not a failure
to redeliver it on demand."

4. The defendant having been charged with a viola-
tion of Section 1771, Hill's Ann. Laws, approved October
26, 1882, it is claimed that an act entitled "An act to reg-
ulate warehousemen, wharfingers, commission men and
other bailees, and to declare the effect of warehouse re-
ceipts," approved February 23, 1885 (Hill's Ann. Laws,
§§ 4201–4207), repealed by implication so much of the
preceding section as related to a bailment of grain, or an
alleged conversion thereof by a warehouseman; and hav-
ing, within the time allowed therefor, moved in arrest of
judgment on the ground that the information did not state
facts sufficient to constitute a crime, the court erred in over-

ruling the motion. It is argued that the warehouse act is complete within itself, and, as section 8 thereof expressly repeals all other acts or parts of acts in conflict therewith (Laws, 1885, p. 61), it is manifest that the legislative assembly intended that said act should take the place of all other statutes upon the subject; that such intention is evidenced by the fact that the prior statute and the warehouse act prescribe different penalties, thus showing that they are in conflict, and that the latter act prevails, under which, if the state had any case against the defendant, he could unquestionably have been prosecuted.

The warehouse act, so far as deemed applicable herein, is as follows: "It shall be the duty of every person keeping * * any warehouse * * where grain * * is stored, to deliver to the owner of such grain * * a warehouse receipt therefor, which receipt shall bear the date of its issuance, and shall state from whom received, the number of sacks, if sacked, the number of bushels or pounds, the condition or quality of the same, and the terms and conditions upon which it is stored": Hill's Ann. Laws, § 4201. The deposit of the wheat alleged in the information to have been converted by defendant to his own use was evidenced by the following memoranda:

"No. 138.                HUMPHREYS' WAREHOUSE.
Original.               Salem, Oregon, August 11, 1900.
    Received from E. T. Hall 51.30 bushels wheat. Sacks returned, 30. Sacks returned empty, ——.
                        A. M. HUMPHREYS & Co., Weigher.
                                            Swart.

"No. 142.                HUMPHREYS' WAREHOUSE.
Original.               Salem, Oregon, August 13, 1900.
    Received from G. Hall 50.55 bushels wheat. Sacks returned, 30. Sacks returned empty, ——.
                        A. M. HUMPHREYS & Co., Weigher.

"No. 145.          HUMPHREYS' WAREHOUSE.
Original.                    Salem, Oregon, August 13, 1900.
     Received from G. Hall 52.55 bushels wheat.   Sacks re-
turned, 30.   Sacks returned empty, ——.
                              A. M. HUMPHREYS, Weigher.

"No. 150.          HUMPHREYS' WAREHOUSE.
Original.                    Salem, Oregon, August 14, 1900.
     Received from E. T. Hall 49.10 bushels wheat.   Sacks
returned, 29.   Sacks returned empty, ——.
                         A. M. HUMPHREYS & Co., Weigher."

     An examination of these receipts will show that they
do not comply with the requirements of the statute, in
that they fail to state the condition or quality of the wheat
deposited, and omit the terms and conditions upon which
it was stored.   Whether an information for a violation of
the provisions of the warehouse act could be supported
by such evidence of the deposit of grain as these receipts
afford it is not necessary now to inquire, for, since they
failed to conform to the requirements of the statute in the
particulars indicated, the defendant was, in our opinion,
properly informed against as an ordinary bailee, under
Section 1771, Hill's Ann. Laws, and hence no error was
committed in overruling the demurrer, or in refusing to
arrest the judgment.

     5. It is contended by defendant's counsel that the court
erred in overruling their motion for a change of venue.
The defendant's affidavit therefor is to the effect that the
people of Marion County, in consequence of the many
bank and warehouse failures therein, were so prejudiced
against him, that he could not secure an impartial trial
therein, and for a like reason could not obtain a fair trial
in the counties of Benton, Clackamas, Lane, Lincoln, Polk,
Tillamook, Washington, or Yamhill; that, though he was
innocent of any crime, the people of said counties were so
prejudiced against him that they would not believe the

most reliable testimony that could be produced in his be-
half, and that many of said persons had threatened to mob
and hang him; that their excitement and frenzy were
caused by the many warehouse and bank failures, sixteen
of which (naming them) occured in Marion, and thirty
(naming them) in the other counties; that by reason of
said failures the people therein organized secret alliances,
by means of which they kept in constant communication
with each other in respect to the merits of his cause; that
false statements as to his embarrassment in the warehouse
business, and shortage of grain stored with him, have been
circulated in said counties, and are believed to be true,
and no amount of evidence, however reliable, could con-
vince them to the contrary; that, among other false state-
ments, it was reported that he stole the grain stored with
him, and especially that specified in the information, and
that he had shipped said wheat, and sold it, without the
consent or knowledge of the owners; that it had been
falsely reported in said counties that he had stolen and
shipped away wheat, and appropriated the proceeds thereof
to pay debts contracted in gratifying his extravagant
habits; that many persons in said counties who did not
know the facts involved in this action, who never stored
wheat with him or knew him, were then, and for a long
time prior thereto had been, threatening to hang him,
because they had lost money deposited in a bank that sus-
pended payment, or property stored in some other ware-
house by the failure thereof; that many of his personal
friends had become his enemies, and were threatening to
do him bodily harm; that two days prior to the making
of his affidavit one of his most intimate friends, who never
stored any grain with him, when spoken to about the trial
of this action, cursed and railed at him, remarking that
he and all other warehousemen and bankers were thieves,
and ought to be hanged; that there had been a failure to

convict bankers and warehousemen who were innocent of
any crime, notwithstanding which the people in said
counties generally believed that all men following these
occupations should be convicted, and their excitement over
such failures compelled them to seek some sacrificial victim,
and he had been selected for that purpose; that, having
become embarrased in the wheat business, he was taken
sick, about March 1, 1901, and the storers of grain with
him became much excited, and while he was unable to
transact any business he notified said storers to meet him
at his warehouse at Salem, Oregon, at a day named, at
which time, and while he was ill in body and mind, some
of said storers became excited and threatened to hang him,
or to throw him into the Willamette River, whereupon
the meeting broke up in almost a general mad panic; that
he suffered a relapse from such excitement and exposure
incident to the meeting, and for some time thereafter was
out of his mind; that he had been informed and verily
believed that secret meetings had been held at Salem, dur-
ing that and the preceding term of court, by the people
of Marion County, at which threats of lynching him were
freely discussed, and such menace would have been put
into execution but for the counsel of some cool-headed
persons; that he had discussed these matters with the
more responsible people of Marion and said other counties,
and had been informed by them that the people generally
entertained bitter feelings against him because he was a
warehouseman, and that he would not only be obliged to
prove his own innocence in this action, but also that of
all other warehousemen and bankers who had failed in
business in said counties, before he could with the remotest
possibility secure a verdict of acquittal from any jury that
could be selected in either of said counties.

The supplemental affidavit of J. B. Ashley is to the
effect that he had stored in defendant's warehouse 750

bushels of wheat, no part of which had ever been received by him ; that he was present at the meeting referred to in the preceding affidavit, and corroborates the defendant in respect to the threats then made to do him bodily injury; and that in consequence of the frenzy there manifested, and of the excitement incident to bank and warehouse failures, the defendant could not, in his opinion, secure an impartial trial in Marion County.    The defendant also filed the affidavits of twenty-seven other persons to the effect that each was acquainted with a great many people residing in said counties; that defendant's failure had been generally discussed therein, and a very bitter feeling existed against him and all other warehousemen that had failed, some of the deponents saying that they had heard of threats of violence having been made against the defendant, and all joining in the opinion that it would be impossible for him to secure an impartial trial in either of said counties.

The state, resisting the motion for a change of venue, filed the affidavit of W. D. Claggett to the effect that he attended the meeting of creditors referred to by the defendant, held in March, 1901, and that no threats were made thereat to lynch, mob, or do other violence to him. The affiant controverts the statements made in defendant's affidavit, but the following, among other denials, is criticised, to wit : "That it is not true that by reason of many warehouse failures a general or secret alliance of any kind has been organized in all or any of the counties mentioned in defendant's affidavit for the purpose of assisting in the conviction of the defendant or any other warehousemen, or for any other purpose whatever."    He further states that, though warehouses were operated at Macleay and Salem by defendant, he was not known in other parts of Marion County by many people, nor had they heard that he was accused of the commission of any crime, and that no diffi-

culty would be encountered in securing in said county a
jury that would be absolutely without bias or prejudice
against him.    The state also filed the affidavits of thirty-
one other persons, controverting the statements contained
in defendant's affidavit, except in a few particulars, each
deponent expressing the opinion that the people of Marion
County were not prejudiced against defendant, and that he
would be able to secure a fair and impartial trial therein.
The defendant filed a counter affidavit to the effect that
ten of the persons so resisting his motion were either de-
positors of wheat in his warehouse, or related to those stor-
ing grain therein, and therefore interested in securing his
conviction.    It is argued by his counsel that the showing
so made by their client presented such a state of facts as
indicated that it was impossible for him to secure in said
county an impartial trial, and that the court's refusal to
grant a change of venue was such an abuse of discretion
as to render its action subject to review.

The organic law of the state guarantees to the accused
in all criminal prosecutions the right to a public trial by
an impartial jury in the county in which the offense shall
have been committed : Const. Or. Art. I, § 11.    The right
to change the place of trial, however, in an action for a
felony, is expressly conferred by statute, and may be ex-
ercised when it appears by affidavit to the satisfaction of
the court that a fair and impartial trial cannot be had in
the county where the action is commenced : Hill's Ann.
Laws, § 1222.    The power thus vested in the trial court is
coupled with a sound legal discretion, to be exercised in
determining the question of fact put in issue by the affi-
davits of the parties in support of and opposed to the
change of venue, and the action of the court thereon will
not be reviewed unless there has been an abuse of such
discretion : 4 Ency. Pl. & Pr. 499 ; *State* v. *Pomeroy,* 30 Or.
16 (46 Pac. 797); *State* v. *Savage,* 36 Or. 191 (60 Pac. 610,

61 Pac. 1128); *People* v. *Yoakum*, 53 Cal. 566 ; *People* v. *Elliott*, 80 Cal. 296 (22 Pac. 207); *Price* v. *People*, 131 Ill. 223 (23 N. E. 639).    In *Kelly* v. *State*, 52 Ala. 361, Mr. Justice MANNING, in speaking of the superior advantage possessed by a trial court in passing upon an application to change the place of trial, says : "And a circuit judge on the spot, in 'view of all the circumstances,' and having knowledge of persons, facts, and influences, is much better qualified than the supreme court at a distance, with only ingeniously written *ex parte* affidavits before it, to determine the fact whether or not it is true that the defendant cannot have a fair trial by an impartial jury in the county in which he is indicted."    The reason so assigned affords a strong argument, which might properly be invoked in every case ; but it is not conclusive, however, and in every application of this character the issue of fact presented must be examined upon its merits.    After considering the affidavits of the respective parties in the light of this rule, we are not prepared to say that there has been an abuse of discretion, and hence the action of the court in refusing to grant the change of venue will not be disturbed.

6. The state having introduced its evidence and rested, defendant's counsel moved the court to instruct the jury to return a verdict of not guilty, but, the motion having been denied, it is contended that an error was thereby committed.    It is argued that the testimony does not disclose that defendant sold, shipped, or used, or in any manner converted, any of said wheat, nor does it show any criminal intent.    The testimony introduced by the state prior to the motion is contained in the bill of exceptions, an examination of which shows that E. T. Hall delivered to defendant in Marion County, Oregon, 204 bushels of wheat, receiving from him, as evidence of the deposit, the load checks hereinbefore set out, two of which erroneously contained the name of G. Hall; that the value

of the grain so deposited was about $102, the storage charges of which for one year were $2\frac{1}{2}$ cents a bushel; that about March, 1901, defendant informed Hall that there was no wheat in his warehouse, saying that he had a shortage of from 8,000 to 12,000 bushels, which had been accumulating for three or four years, caused by the shrinkage of the wheat. G. G. Swart, as a witness for the state, testified that he was employed by defendant in his warehouse and authorized by him to issue receipts for grain stored therein when Hall's wheat was received; that defendant shipped the wheat so stored, including that of Hall's, to Portland and Turner, Oregon, and to San Francisco, California, and that on March 28, 1901, there was no wheat remaining in the warehouse. E. T. Hall, as a witness for the state, testified that the wheat was deposited in the warehouse under an agreement that he would pay the customary storage charges, and should receive in return the same number of bushels of wheat, or the value thereof, in case he sold the grain to the defendant, and that he never sold it to him.

The wheat having been delivered to and accepted by the defendant, constituted a bailment, and any exercise of dominion over it by him, inconsistent with the claim of the owner, amounted to a conversion of the grain. The testimony having disclosed that defendant, instead of returning the wheat in compliance with the terms of the agreement, shipped it away, thereby necessarily negatives any permission secured from the owner to take it.

The fact of his having taken the wheat was established, if the jury believed Swart's testimony, from which they might infer the defendant's intent which accompanied the taking: Hill's Ann. Laws, § 771. The burden was imposed upon the state to prove every material allegation of the information beyond a reasonable doubt, and as a criminal intent is a necessary ingredient in all cases of

felony, it was incumbent upon the state to prove such intent. It would be a difficult task, in almost every instance, to secure a conviction in cases of felony, if the proof of a criminal intent depended upon direct testimony, for a person contemplating the violation of a public law rarely proclaims his purpose prior to the commission of the overt act. The motives that seemingly induce human action are not often discovered, except by deduction, which the reason of the jury makes from the proven facts that necessarily precede, are inseparably connected with, and naturally result from, the commission of the overt act, the *animus* of which is the subject of their inquiry. This being the only known method whereby a criminal intent can be ascertained, the law wisely permits the jury, upon proof of the commission of the overt act by the defendant, to deduce his intention from a consideration of all the circumstances reasonably connected therewith. We think the testimony introduced, if believed by the jury, who were the sole judges of its weight, was sufficient to prove that the wheat was shipped away by the defendant, and, that fact having been established, the jury were authorized to infer therefrom the intention of the defendant in connection with such conversion.

7. It is further contended in behalf of defendant that the testimony shows that the transaction between Hall and their client was a sale, and not a bailment, and, this being so, the court erred in not directing the jury to return the verdict desired. Upon this branch of the case Hall testified that he expected to sell the wheat stored in the warehouse to the defendant, if he would pay as much therefor as any other person, and that in depositing it he expected to receive in return the same number of bushels of wheat, or the value thereof, but that defendant did not have an option to purchase the grain so stored, nor did he sell it to him. We do not think the title to the grain passed by

the agreement entered into between Hall and the defendant in respect to storing it in his warehouse.

It is insisted by defendant's counsel that the testimony conclusively shows that in all the transactions involved in this case the defendant acted as and was a warehouseman, and, as he was charged with a violation of Section 1771, Hill's Ann. Laws, which was repealed, in respect to warehousemen, by the act of February 23, 1885 (Laws, 1885, p. 61), the information did not state facts sufficient to constitute a crime, and hence the court erred in not directing the jury to return a verdict of not guilty. It may have been that defendant sustained the relation of a warehouseman to other depositors of wheat, but, as such occupation is required to be evidenced by the issuance of receipts stating the condition and quality of the commodity, and the terms and conditions upon which it is stored (Hill's Ann. Laws, § 4201), and as the receipts issued to Hall did not comply therewith, it is certain that as to him defendant was not a warehouseman, and no error was committed in refusing to instruct the jury as requested. We do not wish to be understood as intimating, however, that an information would not lie for a violation of the provisions of the warehouse act when the deposit was evidenced by a receipt which failed to state the terms and conditions upon which the commodity was stored; nor to hold that Section 1771, Hill's Ann. Laws, was repealed by implication in so far as it relates to warehousemen.

8. The court, when overruling the motion to direct a verdict, and referring to the character of receipts required to be issued under the warehouse act, said, in the presence of the jury:

"It must be such receipt as is described in the first section. Now, suppose a man, although he is a warehouseman, gets hold of the grain of some person, and then ships it away, or converts to his own use, or destroys it, or does

anything which deprives the owner of his grain without his consent, can he come in and say, 'It is true, I took this grain, but I did not issue any receipt for it, and I did not have the consent of the owner, and this property does not come within the meaning of the warehouse act; but I am a warehouseman, so there is a sanctity around me which you cannot invade?' I do not think it is the intention of the statutes to do that. To hold that the fact that a man is a warehouseman protects him from a charge of larceny by bailee, or plain stealing, so that he could shield himself behind the warehouse act, is not the intent of the law. I think a man who gets hold of the property, no matter whether he is a warehouseman or anybody else when he gets hold of the property, and converts it to his own use, within the meaning of this statute against larceny by bailee, is liable."

Defendant's counsel having excepted to all that part of the language quoted commencing with the words "to hold," etc., the court replied: "I think that is the law. I do not intimate that the defendant did any of those things. That is for the jury to determine," whereupon defendant's counsel said, "That is the reason we except to it."

Invoking the rule adopted in *State* v. *Lucas*, 24 Or. 168 (33 Pac. 538), it is contended that the remarks of the court so excepted to invade the province of the jury, and, this being so, the judgment should be reversed. In the case to which attention is called the court said of the prosecuting witness, in the presence of the jury, "It does not follow that because a woman is lewd that it affects her veracity," and it was held that the remark invaded the province of the jury, who were the exclusive judges of the credibility of a witness. In the case at bar, however, it would appear that the language of the court was illustrative of a hypothetical case, and not applicable to the defendant; but, in any view of the case, the court having stated that the remarks did not refer to the defendant, we do not think he was prejudiced thereby. Thus, in *State* v.

*McDaniel*, 39 Or. 161 (65 Pac. 520), Mr. Chief Justice BEAN, in disposing of a similar contention, says: "The remarks of the court, however, were not made to the jury, but in passing upon the competency of evidence. In such a case the court has a right to use such language as is necessary to make its ruling understood, and in this case any error that may have been committed was, in our opinion, cured by the subsequent withdrawal of the objectionable words, and the instruction to the jury to disregard them."

9. Anna A. Humphreys, the defendant's wife, having appeared as his witness, and testified on direct examination that the signatures to the load checks, hereinbefore set out, were not in the handwriting of the defendant, but were appended by G. G. Swart and one Emmett, was asked on cross-examination: "At the time Swart and Emmett signed these load checks as you have stated, were they not both in the employ of the defendant, and authorized by him to receipt for and weigh wheat and issue these load checks in his name?" An objection to the question on the ground that it was not proper cross-examination having been overruled, and an exception allowed, the witness replied that Swart and Emmett were so employed at the time, and had authority from the defendant to issue load checks in his name. It is contended that the question so excepted to was not germane to any testimony given by the witness in chief, but was affirmative substantive evidence on the part of the state, and that the court erred in permitting her to answer it. It will be remembered that Mrs. Humphreys testified in her direct examination that Swart and Emmett signed her husband's name to the load checks, and, having done so, we think no error was committed in requiring her to answer the questions so propounded.

Exceptions were also taken by defendant's counsel to certain parts of the court's charge to the jury, and to its

modification of and refusal to give certain instructions requested; but upon an examination thereof we do not think any error was committed. It follows from these considerations that the judgment is affirmed.     AFFIRMED.