Argued March 16; decided April 5, 1897.

### STATE *v.* HANLON.

[48 Pac. 353.]

TRANSCRIPT—TITLE—RULES OF COURT.—In preparing a transcript for an appeal to the supreme court it is sufficient to set out the title of the court and cause in connection with the first paper, though it is better to use the word "title" at the head of each paper. Rule 2 of the supreme court (24 Or. 591, 37 Pac. 6), is sufficiently complied with, however, by using the title once.

APPEAL—SUFFICIENCY OF NOTICE.—A notice of appeal, which states the nature of the action, the parties, the title of the court, and the sentence pronounced, is sufficient to confer jurisdiction, though it fails to designate the time when said judgment was rendered: *Crawford* v. *West*, 26 Or. 596, applied.

"SHOP" DEFINED—LARCENY.—A building wherein a workman pursues his business and keeps his tools, or the products of his labor, though no article is sold or offered for sale therein, is a "shop," within the meaning of Section 1764 of Hill's Annotated Laws, punishing larceny "in any * * * store, shop, or warehouse."

INDICTMENT—DECREE OF LARCENY.—Defendant may be convicted of petty larceny under an indictment for larceny from a store, where the value of the stolen property is alleged: *State* v. *Taylor*, 3 Or. 10, followed.

IDEM.—A boiler and engine house where nothing is sold or manufactured and where only the machinery and the tools used in caring for it are kept is not a "shop" under a statute punishing larceny in such a place.

From Multnomah: THOMAS A. STEPHENS, Judge.

George Hanlon appealed from a conviction of larceny in shop.

REVERSED.

For appellant there was an oral argument by Messrs. *John F. Logan* and *John L. McGinn*.

For respondent there was an oral argument by Messrs. *Cicero M. Idleman*, attorney-general, *Wilson T. Hume*, district attorney, and *Daniel J. Malarkey*.

MR. CHIEF JUSTICE MOORE delivered the opinion.

The defendant, George Hanlon, having been indicted, tried, and convicted of the crime of larceny in a shop by stealing a watch therefrom, was sentenced to imprisonment in the penitentiary for the term of four years, from which judgment he appeals, assigning as error of the trial court its failure to charge the jury as requested.

At the threshold of this cause we are confronted with a motion to dismiss the appeal, counsel for the state contending that the notice thereof does not identify the judgment complained of, and therefore no jurisdiction is conferred by its service. The transcript, which contains a copy of this process, has the following recital: "Afterward, on the twenty-second day of September, 1894, the defendant filed his notice of appeal in words and figures as follows: To W. T. Hume, district attorney of the fourth judicial district, and attorney for the state of Oregon in the above entitled criminal action, and to Dan J. Moore, clerk of the above

entitled court. Notice is hereby given that the above-named defendant, George Hanlon, appeals to the Supreme Court of Oregon from the proceedings and judgment had in the above entitled criminal action, and from the sentence therein pronounced against him, said sentence being that said George Hanlon, be confined in the penitentiary of the state of Oregon for the period of four years. McGinn and Logan, attorneys for defendant." A summary of the objections urged against this notice is as follows: (1) There are no parties named in the notice of appeal. (2) The notice does not specify the county from which the appeal is taken. (3) It does not designate the time when the judgment was rendered; and (4) it does not show that any court having jurisdiction of the cause or person pronounced the judgment. The title of the court and cause are stated in the first paper set out in the transcript, and a comparison of the foregoing notice of appeal with the form prescribed in rule 2 of this court (see rule 2 of the supreme court, 24 Or. 591, 37 Pac. 6), shows that the manner of setting out a copy of this process has been strictly followed. In a note to said rule 2 it is said: "The title of the court and cause, unless otherwise directed, may be omitted from all papers except the first paper in the cause, but the word 'title' shall be used, the character of the paper, whether complaint, summons, answer, etc., shall be designated." The word "title" does not immediately precede the notice of appeal, to show its omission therefrom, but it is manifest that this is a mere clerical error in making up the transcript,

and that the title of the court and cause are understood to be prefixed to every separate paper, a copy of which is set out in the record, and that the notice of appeal showed the court in which, and the party against whom, the judgment was rendered. The rule above referred to was framed with a view to saving expense to parties litigant in the preparation of transcripts on appeal, and the note thereto from which the extract is taken amounts to a suggestion only in explanation of the rule; but if the note had the effect of a positive enactment on the subject, the alleged error in the record would not be fatal to the appeal, because it could be rectified by obtaining from the clerk of the trial court a certified copy of the notice of appeal, which, in our judgment, would clearly show that the title of the court and cause were prefixed to the process relied upon to give this court jurisdiction. Believing, as we do, that the omission of the word "title," preceding the notice of appeal in the record, was immaterial, this disposes of all the objections to this part of the transcript except that the notice of appeal does not designate the time when the judgment was rendered.

If the notice of appeal informs the adverse party that a party to the judgment intends to appeal therefrom to the supreme court, and is so specific in its description of the judgment complained of as to acquaint a stranger to the record with the judgment alluded to in the notice, it is sufficient to confer jurisdiction; and this object may be accomplished without alluding to the time when the

judgment was rendered. The notice of appeal states the nature of the action, the name of the parties, the title of the court rendering the judgment, and specifies the sentence pronounced by it upon the defendant, and, under the liberal rule announced by this court in *Crawford* v. *Wist*, 26 Or. 596 (39 Pac. 218), we deem it sufficient to advise a stranger to the record what judgment was thereby intended and adequate to confer jurisdiction.

Turning now to the evidence contained in the bill of exceptions, it shows that on July 2, 1894, one Andrew Armstrong was the engineer in charge of the boiler and engine situate in a building known as the pumping station of the East Side Water Company, a corporation, then engaged in pumping water and supplying it to the citizens of Portland; that no business was transacted, nor were any goods, wares, or merchandise offered for sale, in this building; nor was any property kept therein, in addition to the machinery, except a few tools used in the operation of the engine and pumps. On said day the defendant entered this building, and, seeing the engineer's watch hanging on the wall, took and carried it away, but, being observed by Armstrong, who pursued him, he ran until overtaken by the latter, when he threw the watch on the ground, thereby breaking it. Defendant's counsel requested the court to give the following instructions to the jury: "You are charged that a pumping station or boiler-room is not a 'shop' within the meaning of the law, unless there are goods stored there and actually sold," and that

they might find the defendant guilty of petty larceny; but the court refused to comply therewith and exceptions were saved.

The statute under which the defendant was indicted is as follows: " If any person shall commit the crime of larceny in any dwelling-house, banking-house, office, store, shop, or warehouse * * * such person, upon conviction thereof, shall be punished," etc.: Hill's Annotated Laws, § 1764. A shop is defined to be " A building in which goods, wares, or merchandise are sold at retail; or in which mechanics labor, and sometimes keep their manufactures for sale": 22 Am. & Eng. Enc. Law (1st Ed.), 778. In England the word "shop" is understood to be a structure or room in which goods are kept and sold at retail: Bishop on Statutory Crimes, § 295. In this country, however, such a building is usually called a " store," and universally so in the western and Pacific coast states, where a "shop" is understood to be a building in which an artisan carries on his business, or laborers, workmen, or mechanics, by the use of tools or machinery, manufacture, alter or repair articles of trade. Under this definition it will be observed that the sale of these products in the building where manufactured, altered, or repaired is not necessarily an ingredient in determining what constitutes a shop. In Massachusetts it would appear that the words "store" and "shop" were synonymous: *Commonwealth* v. *Riggs*, 14 Gray 376 (77 Am. Dec. 333); but in New Hampshire the court reached a different conclusion in *State* v. *Canney*, 19 N.

H. 135, in which GILCHRIST, C. J., in rendering
the decision, says: "In conversation we speak of
a 'store' as a place where goods are exposed for
sale, thus giving it the same meaning as 'shop.'
Still, we recognize a difference between the mean-
ings of these two words. Thus we do not call the
place where any mechanic art is carried on a 'store,'
but we give it the name of 'shop,' as a tailor's
shop, a blacksmith's shop, a shoemaker's shop. We
usually understand by the word 'store,' a place
where goods are exhibited for sale, but we do not
always mean a store when we use the word 'shop.'
Now, as we do not use the word 'shop' and 'store'
as synonymous, there is no reason to suppose that
they were intended to be so used in the statute; for
if they were so considered, only one of these appel-
lations would have been necessary, and, as there
is a recognized difference in their meaning, we
cannot consider them synonymous." "There are
few, if any," says BRICKELL, C. J., in *Sparrenberger*
v. *State*, 53 Ala. 481 (25 Am. Rep. 643), "who
would understand that a man had a store, and was
engaged in buying and selling goods or merchan-
dise, if we said he had a shop. We never speak of
the place in which the mechanic exercises his
trade as a store, nor do we speak of the place in
which goods are bought and sold as a shop." The
legislative assembly of this state, in classifying the
buildings in which the law vigilantly guards prop-
erty which might be left therein, evidently under-
stood the local meaning of the structures which
protected the commodities within their walls, and

by making use of the words "store" and "shop"
recognized the fact that they were not synonym-
ous, for if this were not so one of these words
would be useless. Under the definition, as above
given, we will examine the instructions which de-
fendant's counsel requested the court to give, to
the effect that a building is not a "shop," within
the meaning of the statute, unless goods are stored
and actually sold therein. We think there was
no error in the court's refusal to so charge the
jury, for, as we view the statute, a building is a
"shop" whenever a workman pursues his business
and keeps his tools or the product of his labor
therein, notwithstanding such articles of trade may
not be offered for sale or be sold on the premises.

4. The court having instructed the jury that
they must find the accused either guilty as charged
in the indictment or not guilty, counsel for the
defendant contend that the court erred in its re-
fusal to charge them that they might also find him
guilty of simple larceny. The indictment having
alleged the value of the watch taken to be $30,
could the defendant have been convicted of simple
larceny under a charge of larceny in a shop? The
answer to this question must necessarily depend
upon a consideration of the question whether the
crime charged in the indictment consists of differ-
ent degrees. In *State* v. *Taylor*, 3 Or. 10, which
was an action tried in the Circuit Court of Mult-
nomah County, UPTON, J., in answering the ques-
tion here presented, said: "There is a form given
in the Code for larceny in a dwelling that omits to

state the value of the property stolen, and I think under that form of indictment a conviction of simple larceny could not be sustained; but if the value of the property be also alleged, the indictment will charge all the facts to constitute the latter crime." The law, in order to encourage the transaction of business, and to guard the safety of the home, throws its mantle of protection over all goods in the class of buildings enumerated in the statute, without regard to their worth, and hence the value of such property is not an ingredient in the crime of larceny in a shop; but if the indictment allege the value of the property so appropriated therein, we see no just reason why the accused might not be found guilty of simple larceny, and particularly so if the jury should find that the building in which the property was taken was not among the class enumerated in section 1764. Under the testimony given at the trial it is quite evident that the building in which the watch was stolen was not a "shop" within the meaning of the statute, but, the value of the property taken having been alleged in the indictment, the crime therein stated consisted of different degrees, in which case it was the province of the jury to find the accused guilty of an inferior degree (Hill's Ann. Laws, §§ 1359 and 1382); and hence the court erred in its refusal to so instruct the jury It follows that the judgment is reversed, and a new trial ordered.

REVERSED.