### TEMPERANI v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. June 16, 1924.)

No. 4129.

1. **Searches and seizures ⬤⟲7—Constitutional provision against unreasonable searches of "houses" held applicable to garage.**

   Const. Amen. 4, protecting the people against unreasonable searches of "their house," held applicable to a garage underneath a one-story dwelling.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, House.]

2. **Intoxicating liquors ⬤⟲2 —Search not authorized, as made in officers' arrest for offense in officers' pr**

   Search of a garage, underneath a one-story dwelling, from which odors arising from the manufacture of intoxicating liquors were emanating, was not justifiable, as made to effect arrest for offense in officers' presence, where the offender was not then in the garage, and the officers had no reason to suspect his presence.

---

**3. Criminal law ⬥395—Evidence obtained during illegal search held not admissible.**

Articles seized during search of defendant's garage without search warrant, in violation of Const. Amend. 4, *held* inadmissible.

**4. Criminal law ⬥1169(3)—Erroneous admission of evidence held harmless, in view of defendant's testimony admitting facts.**

In liquor prosecution, the admission of evidence obtained by means of a search of defendant's garage without a warrant, in violation of Const. Amend. 4, *held* harmless, in view of defendant's testimony, in which he admitted facts which such evidence tended to prove.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the First Division of the Northern District of California.

Joe Temperani was convicted of having in his possession property designed for the manufacture of liquor, and of possession of intoxicating liquor, and of manufacturing intoxicating liquor fit for beverage purposes, and he brings error. Affirmed as to conviction for possession of property designed for the manufacture of liquor, and reversed as to possession and manufacture of liquor.

Edward A. O'Dea, of San Francisco, Cal. (Walter McGovern, of San Francisco, Cal., of counsel), for plaintiff in error.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The plaintiff in error resides at 354 Orazabo street, in the city of San Francisco. The place of residence consists of a one-story dwelling with a garage underneath. Some time prior to December 1, 1922, certain federal prohibition agents were informed that intoxicating liquor was manufactured in the garage beneath the dwelling. On the above date the officers visited the premises, and detected the odor arising from the manufacture of intoxicating liquor emanating from the garage. They thereupon forced an entry and discovered stills in operation, a quantity of intoxicating liquor, and a quantity of mash used in the manufacture thereof. At the time of the entry there was no person in the garage, and the plaintiff in error was absent from home. The property thus found was seized by the officers. Before the trial a motion was interposed for its return, upon the ground that the search and seizure were unlawful. The motion was denied, and upon this ruling the principal assignment of error is based.

[1-3] Article 4 of the Amendments to the Constitution of the United States declares that the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. In construing similar language in Bare v. Commonwealth, 122 Va. 783, 94 S. E. 168, the Supreme Court of Appeals of Virginia said:

"We know of no analogy in the law for the construction of this language, except such as is found in the common and statute law referring to arson, burglary, and to homicide and assault cases, where the prisoner claims to

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

have committed the alleged crime in self-defense after having retreated to his castle or his home. As construed by the courts from the earliest to the latest times, the words 'dwelling' or 'dwelling house' have been construed to include, not only the main house, but all of the cluster of buildings convenient for the occupants of the premises, generally described as 'within the curtilage.'"

This ruling is supported by Hale, Blackstone, Greenleaf, Bishop, and all the text-writers. Within this definition the garage comes clearly within the protection of the Constitution. Section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides that no search warrant shall issue to search any private dwelling occupied as such, with certain exceptions not material here, and section 6 of the Supplementary Act of November 23, 1921, provides that any officer, agent, or employee of the United States who shall search any private dwelling, as defined in the National Prohibition Act, without a search warrant, shall be guilty of a misdemeanor. 42 Stat. 223 (U. S. Comp. St. Ann. Supp. 1923, § 10184a). These statutes are a limitation upon the right of search, and it may well be that the term "private dwelling," as there used, is not as broad as the term "house" found in the constitutional guaranty, but with that question we have no immediate concern.

The government, as we understand it, does not claim the right to search a private dwelling or garage under the facts disclosed by this record, but an attempt is made to justify the conduct of the officers under the common-law or statutory rule permitting peace officers to make arrests for offenses committed within their presence. But here the offender was not in the presence of the officers; he was not in the garage, and they had no reason to suspect that he was there. Laying all pretense aside, the officers entered the garage, not to apprehend an offender for committing an offense within their presence, but to make a search of the premises to obtain tangible evidence to go before a jury, and whatever necessity may exist for enforcing the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), or other laws, the violation of rights guaranteed by the Constitution cannot be tolerated or condoned. If present laws are deficient in not permitting the search, in a constitutional way, of homes where intoxicating liquor is known to be manufactured, the remedy is with Congress, not in subterfuge or evasion. For these reasons, the court should have kept from the jury all property found on the search and all evidence given by the officers concerning the same. Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

[4] Ordinarily this error would call for a reversal of the judgment, but the plaintiff in error took the witness stand in his own behalf and admitted the possession of the still, as charged in the first count of the indictment, and is now in no position to claim that incompetent testimony was admitted to establish that fact. There is some claim that this admission was brought out through improper cross-examination, but the plaintiff in error took the witness stand for the purpose of proving what he kept in the garage, and the connection between the garage and other portions of the house, and the cross-examination was not entirely without the scope of the testimony thus given on direct. But

the admission of the plaintiff in error did not go beyond the charge contained in the first count of the indictment, and there is no competent testimony to sustain the remaining charges.

The judgment of the court below is therefore affirmed as to the first count, and reversed as to the two remaining counts.

GILBERT, Circuit Judge (dissenting). The dwelling house of the plaintiff in error was a two-story structure. He and his family lived in the upper story. The lower story was made for a garage. It was unconnected with the upper story. The only access to it was from the outside. The prohibition agents detected strong odors of fermentation and distillation, which were noticeable a half a block away from the premises. Having tried without success to obtain peaceable entrance into the garage, they forced one of the doors and entered. They found therein three 20-gallon stills in full operation, with fires burning under each, 1,500 gallons of mash, one hydrometer, and 25 gallons of jackass brandy. It is contended that, there having been no proof of sale of liquor thereon, the premises were immune from search and seizure, by virtue of National Prohibition Act, tit. 2, § 25 (Comp. Stat. Ann. Supp. 1923, § 10138½m), providing that no warrant shall issue to search any private dwelling, unless used for the unlawful sale of intoxicating liquor, or in part used for some business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house. It would be a permissible construction to hold that the defendant's garage, devoted, as it was, to manufacturing purposes, was a shop within the meaning of the statute. The Century Dictionary gives as one definition of a shop:

"A room or building in which the making, preparing, or repairing of any article is carried on, or in which any industry is pursued."

A definition in 25 Amer. & Eng. Enc. of Law, 1058, is:

"A building in which mechanics labor and sometimes keep their manufactures for sale."

In Chicago, R. I. & P. Ry. Co. v. Denver & R. G. R. Co. (C. C.) 45 Fed. 304, 314, Judge Caldwell said:

"Commonly, the word 'shop' means a building inside of which a mechanic carries on his work."

In State v. Hanlon, 32 Or. 95, 48 Pac. 353, it was held that a room wherein a workman pursued his business and kept his tools or the products of his labor was a shop, and in McNab v. McGrath, 5 U. C. Q. B. O. S. 516, a shop was held to be a room where manufactures of some kind are carried on.

But, irrespective of the question whether the room so occupied here as a distillery was a shop, there can be no doubt that the purpose to which the plaintiff in error devoted it partook of the nature of the classes of business specified as creating exceptions to the statute. It seems reasonably clear from the language of the statute that Congress intended to except from the protection against search all dwelling houses, a considerable portion of which are devoted to business purposes. The business purposes in contemplation were illustrated by re-

ferring to shops, saloons, etc.; but obviously it was not the intention to limit the exception to the precise kinds of business so enumerated. Otherwise there would have been no occasion to insert the words "such as." In other words, it is inferable that Congress intended to illustrate its purpose by reference to certain specified kinds of business, but did not intend to limit the exception to those which were enumerated, or to exclude others not dissimilar thereto.

A private dwelling, used partly for dwelling house purposes and partly for carrying on any well-known business, should be held to be within the exception, as, for instance, a dwelling house used partly for a factory, a public garage, a filling station, a brewery, a distillery, or a storage warehouse. It may be conceded, as was held in United States v. Kelih (D. C.) 272 Fed. 484, that a dwelling house does not lose its character as such, and become a distillery, merely because a home-made still is found in operation therein; but in the present case the upper story was used as a dwelling house, and the basement, unconnected therewith, was used as a distillery, and the plaintiff in error was engaged in manufacturing intoxicating liquors upon a large scale, and indisputably for commercial purposes. It would, indeed, be a strained construction of the statute which would mean that a distiller or a brewer may so construct his dwelling as to combine with it a brewery or a distillery, and thereby obtain immunity from search or seizure.

In Grogan v. Walker & Sons, 259 U. S. 80, 42 Sup. Ct. 423, 66 L. Ed. 836, 22 A. L. R. 1116, it is held that all the provisions of the Volstead Act are to be liberally construed, to the end that the use of intoxicating liquors as a beverage may be prevented. The premises here in question not being immune from search, it was not necessary that the officers should obtain a search warrant. They had the convincing evidence of their senses that a crime was being committed thereon and in their presence. Said Judge Rogers in Agnello v. United States (C. C. A.) 290 Fed. 671, 679:

"It is well settled that, where an officer is apprised by any of his senses that a crime is being committed in his presence, he may arrest without a warrant. * * * And it is equally true that in such cases an officer may without a warrant enter a building in which the crime is being committed and may search the same."

In Herine v. United States (C. C. A.) 276 Fed. 807, this court held that, where the peace and quiet of people was being disturbed by loud and boisterous noise in a certain apartment, the seizure of the wines and liquors being used therein was no invasion of the security given by the Fourth Amendment. In Vachina v. United States (C. C. A.) 283 Fed. 35, we held that where a bottle containing intoxicating liquor, unlawfully in the defendant's possession, was in plain sight, the seizure thereof by officers was legal, whether or not they had a valid search warrant; the defendant being in the actual commission of an offense in the presence of the officers. A similar ruling was made by this court in Kathriner v. United States (C. C. A.) 276 Fed. 808. In McBride v. United States, 284 Fed. 416, the Circuit Court of Appeals for the Fifth Circuit held that the federal agents, who discovered by the sense of

smell distillation in an unoccupied house, were warranted in entering and arresting the offender without a warrant, and seizing the still; the court ruling that where an officer is apprised by any of his senses that a crime is being committed, it being committed in his presence, search and seizure are legal. Certiorari was denied in that case. McBride v. United States, 261 U. S. 614, 43 Sup. Ct. 359, 67 L. Ed. 827.

"The knowledge that justifies belief as to the actual or probable existence of the crime may arise from any of the senses." United States v. Kaplan (D. C.) 286 Fed. 963, 973.

The commission of the crime is "deemed to be in the presence of such officer, when the latter is apprised thereof by his own senses." United States v. Daison (D. C.) 288 Fed. 199, 202. An offense is in view of an officer, when his senses afford him evidence that it is being committed. In re Mobile (D. C.) 278 Fed. 949.

"If an officer may arrest when he actually sees the commission of a misdemeanor or a felony, why may he not do the same, if the sense of smell informs him that a crime is being committed?" United States v. Borkowski (D. C.) 268 Fed. 408, 412.

About five minutes after the officers entered the premises of the plaintiff in error, and while the distillation was still in progress, he admitted in their presence that he was operating the stills and owned the stills and mash.

The opinion of the majority of this court rests upon the proposition, which in my judgment is untenable, that here the offense of manufacturing liquor unlawfully was not committed in the presence of the officers, for the reason that the defendant himself was not at the time in the garage. He had placed the mash in the stills, had lighted the fires under each, and had gone away. In the meantime, and in the presence of the officers, the unlawful manufacture of liquor was going on, the distillation was in uninterrupted progress, and the jackass brandy was "dropping from the cooler into the container." The defendant, had he been present, could probably have done nothing to add to those activities. The forces which he had set in operation constituted a continuing offense against the law. The manufacture of the forbidden liquor was his act, notwithstanding that at the moment he may have been far distant from the scene. In 1 Bishop, New Criminal Procedure, § 183, it is said:

"These officers may avert a criminal act in the process of commission before them, either by arresting the doers, or by seizing and detaining the instruments of crime. And the power of arrest extends, possibly, to any indictable wrong in their presence."

I submit that the judgment should be affirmed as to all counts.