## UNITED STATES v. GAITAN et al.

## SAME v. COLLURA et al.

(District Court, S. D. California, S. D.)

Nos. 5943-B, 6668-B.

1. **Searches and seizures** ⊙➔3—**Observations of officer, reasonably inducing suspicion of crime, may justify issuance of search warrant.**

The observations of an officer, interpreted in the light of common knowledge, reasonably inducing the suspicion of guilt of crime, may well justify the issuance of a search warrant.

2. **Intoxicating liquors** ⊙➔249—**Search warrant need describe property to be searched for only with reasonable certainty.**

A search warrant issued under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), is required to describe the property to be searched for only with reasonable certainty; a particular, detailed description being unnecessary and in many cases impossible.

3. **Criminal law** ⊙➔394—**Evidence obtained under valid search warrant will not be excluded because of irregularity in execution or return of the warrant.**

If an officer was authorized under a valid search warrant to enter premises, and there obtains evidence lawfully admissible in court, it will not be excluded because the officer failed to deliver a copy of the warrant and receipt to the person in charge, or to make and return a proper inventory.

4. **Intoxicating liquors** ⊙➔255—**Liquor unlawfully possessed will not be returned, though seized under invalid warrant.**

Under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), providing that no property rights shall exist in liquor or property designed for manufacture of liquor intended for use in violation of the act, such property, though seized under an invalid search warrant, will not be returned to the owner.

5. **Criminal law** ⊙➔394 — **Evidence secured through search held admissible.**

Where prohibition agents, from facts within their knowledge, would have been authorized to enter premises and make an arrest therein without a warrant, evidence secured as an incident to such arrest will not be excluded because the search warrant under which they purported to act was invalid.

Criminal prosecution by the United States against Tigeria Gaitan and others and against Charles Collura and another. On motions by defendants for suppression of evidence and for return of property seized. Denied.

These cases present similar questions, and the frequency with which the matters urged herein are being brought to the attention of the court seems to justify the stating of the conclusions of the court at some length. De-

fendants in both cases are charged with the violation of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). In the case first mentioned it is alleged, in appropriate fashion, in various counts, that on or about the 9th day of July, 1923, the defendants, at Los Angeles, manufactured about 23 gallons of intoxicating liquor; that on or about the same day they had in their possession about 23 gallons of intoxicating liquor; that on or about the same day they had in their possession certain property and apparatus designed for the manufacture of intoxicating liquor, consisting of one 15-gallon still, complete, and 7 barrels of mash; and that at a designated building and place at Los Angeles, to wit, 811 Lookout Drive, they maintained a common nuisance, when intoxicating liquors were manufactured, kept, sold, etc. In the Collura case it is alleged that the defendants, on or about the 10th day of June, 1924, at Lennox, in Los Angeles county, manufactured 10 gallons of intoxicating liquor; that on or about the same date they had in their possession a still and 1,000 gallons of fermenting corn mash; that on or about the same date they had in their possession about 18 gallons of intoxicating liquor; and that on or about the same date, at 4626 Garfield avenue, Lennox, they maintained a common nuisance where intoxicating liquor containing alcohol in excess of one-half of 1 per cent. by volume was manufactured, etc.

In each case a motion has been made by the defendants, upon affidavits sworn to by them, for the quashing of the search warrant issued in the case and the return of certain property illegally seized, being the property referred to in the various counts of the respective informations, and that the United States attorney be enjoined and restrained from using or attempting to use said property as evidence at the trial of the case to which the same referred. In each case it is asserted that the premises entered "under cover of a pretended search warrant" were owned, used, and occupied by the respective defendants as their dwelling, and that the search warrant was invalid because issued upon an insufficient showing and in the absence of proper cause; that the same was vague, inconsistent, insufficient, and uncertain, for the reason that the property to be taken thereunder was not particularly identified, named, and described; that the search warrant is void for the reason that the said property seized is not the same as described in the search warrant; that the premises were subjected to an unreasonable search

4 F.(2d)—54

and seizure, in violation of the Fourth and Fifth Amendments to the Constitution of the United States; and that the search warrant was void and illegal for the reason that the agent executing the same did not deliver properly executed copies of said search warrant to the defendants, "in that he did not verify on the back of said search warrant, as required by law, the inventory of the property seized."

In the Gaitan case the affidavit upon which the search warrant was issued was in the usual form as to personal knowledge on the part of affiant, and asked for a warrant for the search of "the following described premises and place, to wit, 811 Lookout Drive, city of Los Angeles, county of Los Angeles, state of California, together with all rooms, closets, lockers, attics, cellars, sheds, outbuildings, and all parts of said premises"; that affiant, on or about the 9th day of July, 1923, "made investigation of the above-described premises and detected the strong odor of fermenting mash, after reports had been received in the office that liquor was being made at this house." In pursuance of that affidavit, sworn to on the 9th day of July, 1923, the United States commissioner issued his warrant for the entering and search of "the premises and place mentioned, referred to, and described in said affidavit, and every part thereof, * * * and to thoroughly search the same for the following described property, to wit"—then specifying many kinds of intoxicating liquors and various apparatus, including stills, usually employed in the manufacture of illicit liquor.

In the Collura case a search warrant of similar tenor was issued for the search of the premises referred to therein, based upon an affidavit subscribed and sworn to on the 10th day of June, 1924, by a general prohibition agent, which averred that affiant "has reason to believe and does believe that within in a certain house, store building, or other place in the Southern district of California, to wit, premises at 4626 Garfield, Inglewood Acres, one mile east of the city of Lennox, county of Los Angeles, state of California, being the premises of name of occupant unknown to affiant, there is located certain property, to wit, intoxicating liquors and articles designed and used for the manufacture of same. * * * The facts, circumstances, and conditions of which affiant has knowledge and as ascertained by affiant are as follows, to wit: On visit to these premises on June 9, 1924, and on dates prior thereto, I smelled the unmistakable odor of fermenting mash, with which I am familiar; have

received reports concerning violations at these premises; have seen cars enter these premises at all hours of the day and night and remain only a few moments. I have every reason to believe and do believe that these premises are being used in the manufacture of intoxicating liquor in violation of the National Prohibition Act," etc.

Joseph C. Burke, U. S. Atty., and Russell Graham, Asst. U. S. Atty., both of Los Angeles, Cal.

Henry C. Huntington, of Los Angeles, Cal., for defendants Gaitan and Montes.

Wallace W. Davis, and Frank M. Davis, both of Los Angeles, Cal., for defendants Collura.

BLEDSOE, District Judge (after stating the facts as above). The principal contention of defendants in each case is based upon the fact, apparently uncontroverted, that the premises searched were occupied as the private dwelling of the respective defendants, and that in virtue of section 25, tit. 2, of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138½m), "no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house." For the purposes of these motions it may be assumed that the search warrants involved herein were per se invalid to the extent that, without evidence as to sales having been made, they authorized the search of private dwellings. Such conclusion or assumption, however, does not, in my judgment, require the granting of the motions made. In passing it may be said that, in my judgment, the facts set out in the affidavits might have justified the United States commissioner to issue his warrant as for a valid search of a place other than a dwelling house. Congress seemingly has determined that no valid search warrant may issue to search a dwelling house, except in virtue of evidence of a sale, or in virtue of the existence of the other matters mentioned in the clause quoted.

[1] What is reasonable cause for the issuance of a search warrant is a matter for judicial determination, and is always to be arrived at after a fair consideration of all of the matters asserted as upon the personal knowledge of the person making the affidavit or in some such appropriate fashion. Judge Deady, in Ex parte Morrill (C. C.) 35 F. 261, 267, held that the observation of the officer, interpreted in the light of "common knowledge," might be the basis for reasonable ground to suspect the commission of a crime. In these days, with the all too widespread disposition to violate the provisions of the National Prohibition Law, made manifest by the congested condition of the calendars of our courts, I am not prepared to say that a person skilled in the subject-matter to the extent that he recognizes the unmistakable odor of fermenting mash is not justified in coming to the conclusion that such mash is being kept and retained for the purpose of distilling illicit liquor. No other use of mash nowadays has been suggested, and, read in the light of present-day activities and uses, the most probable use, viz. the production of spirituous liquor, may well be inferred. Every excuse for the possession of mash, from the intended feeding of hogs to the proposed conversion of the same into fertilizer, has been tendered in my court; but it is not an unreasonable inference, in the absence of some circumstance suggesting a contrary explanation, that its possession is for the purpose of flouting the prohibition law. This the commissioner may reasonably have assumed to be the fact, and in itself justified him in issuing his warrant upon the showing made. The warrants, therefore, upon their face were legal. That, of course, in itself, would not justify their use in the search of a dwelling house, in the absence of the showing required by section 25, supra. In the light of considerations soon to be noticed, however, that circumstance becomes immaterial in respect of these motions.

[2] The other matters contained in the affidavits might not add to their legal sufficiency, but in any event they would not in any wise detract therefrom. Presumably the premises were adequately described. That is certain which can be made certain. And it is to be inferred that from the description given the right premises could be located. Nothing appears to the contrary. To require the property for which search was to be made to be "particularly identified, named and described" would obviously make it impossible to enforce the prohibition law with any degree of effectiveness. One having abundant knowledge that a still is contained within a certain building may yet be unable to describe the still with accuracy, or to indicate with any reasonable specification

at all the attachments, appendages, utensils, and the like, accompanying it and entering into the makeup of the means whereby a violation of the law was being effected. Reasonable certainty as to what was to be searched for and seized, so that a mere roving commission might not be had to take anything or everything on the premises, is all that the law requires.

[3] The assertion that the search warrant itself "is void and illegal," for the reasons that properly executed copies of the same were not delivered to the defendants, or that an appropriate inventory of the property seized was not subsequently made, if true, would seem to me to be unavailing. If a full inventory is desired for any purpose, by appropriate motion it can now be required. If the officer was authorized, however, under a valid search warrant, to enter the premises in question, and did obtain therefrom evidence which may lawfully and properly be introduced in court in furtherance of a prosecution, I know of no rule of reason or authority which would suffice to enjoin the government from making use of such evidence merely because the officer failed to deliver a properly executed copy of the warrant to the person in charge of the premises searched. A valid search warrant being held, authority to search and seize was granted, and a failure to deliver a copy of the warrant after a valid entry into the premises and search of the same, could hardly, in my judgment, suffice to reach back and invalidate such search and seizure.

[4] The proposition that the property, assuming it to have been obtained under an invalid search warrant, must now be returned to the defendants, in order, doubtless, that they may continue further in their ruthless flouting of the law, is not supported by any citation of authorities, and I know of none justifying such a contention. Section 25 of the National Prohibition Act makes it unlawful to have or possess any liquor or property designed for the manufacture of liquor, intended for use in violating the law, or which has been so used, "and no property rights shall exist in any such liquor or property." Pursuant to the requirements of section 33 of the National Prohibition Law, the burden was upon the defendants to show that the liquor or property in their possession was there lawfully, and that burden has in no wise been met. The suggestion for its return, therefore, merits and receives but scant consideration. See U. S. v. Vatune (D. C.) 292 F. 497.

[5] The motion for the suppression of the evidence in the case, which is the real relief demanded by the defendants, is based upon the asserted invalidity of the search warrant, the consequent unreasonableness of the search and seizure, and the fact that the evidence to be used in the case was all obtained by the officers of the government under, and only in consequence of, the issuance of the invalid search warrant. It does not appear from the affidavits, however, that the evidence in the possession of the governmental agents, and presumably to be used by the United States attorney, was obtained only in virtue of the execution of the search warrant. The warrant was issued because of the determination by a prohibition agent, through the exercise of his sense of smell, that a crime, to wit, the operation of a still, or the possession of apparatus designed for the manufacture of illicit liquor, was being committed at the place mentioned in the affidavit. This information came to him when he was engaged in making an investigation of the premises; i. e., was in the immediate vicinity of the same. Nothing appearing to the contrary, in support of the propriety of official action, it is to be presumed that, when the officers with the search warrant approached the premises from which previously the odor of fermenting mash had been detected, they became apprised anew of the presence of fermenting mash upon the premises, through the exercise of the same sense of smell, and in that wise became apprised of the fact that a crime was *then being committed* by the person or persons responsible for the presence of such fermenting mash. Without reference to the search warrant in their hands, valid or invalid, being apprised of the then existing commission of a crime in their presence, it was their duty immediately, under the law, to enter upon and into the premises where such crime was being committed, secure the evidence of its commission, and immediately arrest the persons then and there being and responsible therefor, even without warrant of any kind. Agnello v. U. S. (C. C. A.) 290 F. 671, 679; cases cited in Judge Gilbert's opinion in Temperani v. U. S. (C. C. A.) 299 F. 365, 369. In other words, even without a search warrant or other process, being apprised by their sense of smell or otherwise that a crime was being committed, it was their duty forthwith to enter upon the premises or place where the crime was being committed, seize the evidence, and arrest the perpetrators thereof.

The possession of a search warrant under the circumstances indicated would not be necessary to the conferring of the powers mentioned; its absence or invalidity would not result in derogation from those powers. In the absence of any suggestion to the contrary, it will be presumed that the officers did only their official duty, and that in pursuance of their official duty they did the things enumerated above. If, upon the trial of the case, it shall appear that they acted only in virtue of the search warrant, that on the occasion of its execution and previous to their entrance into the premises they then received no evidence of the then commission of a crime, and therefore had no right to enter the premises as for an asserted arrest for the same, it would become the duty of the court, of course, to sustain an objection to the introduction of the evidence, or to direct the jury to disregard it and return a verdict accordingly. It would be an unheard-of thing, however, for a court to try a criminal case on the merits, on affidavit, in limine, and rule that the case might not be brought to trial at all, merely upon the assertion, uncontroverted or otherwise, that the district attorney had no legal or competent evidence to offer in support of the prosecution. In my judgment it must clearly appear that such is the case before the court may be called upon to act. It not appearing in either of these cases that such is the fact, and, on the contrary, it being reasonably apparent that the evidence in possession of the government may have been obtained in a due and lawful manner, the motion of the defendants for its suppression should be denied.

It is not to be assumed that the conclusions herein announced go counter to the ruling in Temperani v. U. S., 299 F. 365, decided by the Circuit Court of Appeals of this circuit. In that case the officers, though detecting the commission of a crime in their presence, as here, by the exercise of the sense of smell, upon entering the premises found no one in attendance—no one engaged in the commission of the crime, and therefore had no authority to make an arrest. Here no such fact is suggested, and, presuming official duty to have been performed, it will be presumed that the defendants arrested were arrested by the officers at the time of their entry in virtue of their conclusion that some one, then and there being therein, was engaged in the commission of the crime then and there being committed.

The respective motions are denied.