A. David Benjamin, J.
Appeal by defendant from a judgment, after trial, on December 7, 1961 in the then Gamblers’ Court of the Magistrates’ Court, Brooklyn, convicting him of violating section 974 (keeping a place for or transferring money in the game of policy) and section 975 (possession of policy slips) of the Penal Law.- He was sentenced to pay a fine of $250 or three months, and four months on section 974 of the Penal Law, and $250 or three months, and four months on section 975 of the Penal Law, the jail sentences to run concurrently. The defendant is now at liberty pursuant to a certificate of reasonable doubt.
Defendant was arrested in his apartment on November 1,1961 when the arresting officer, after obtaining admission thereto pursuant to a search warrant, found therein-an -adding machine and four pieces of paper described as controller’s ribbons (returns from collectors containing betting records of mutuel horse race policy). On defendant’s person, after his arrest, was found a considerable sum of money.
One of the grievances urged here is that the search warrant was issued without probable cause.
The use of the search warrant as an aid in the detection and punishment of crime has long been favored by governments.
The common law knew it. Lord Coke commented: “ for justices of the peace to make warrants upon surmise * * * is against Magna Charta ” (Institutes, Book 4, pp. 1176-1177). Sir Matthew Hale championed it ‘ ‘ because it is a business preparatory to the discovery of felons * * * and if it should be disused and discountenanced, it would be a public inconvenience ’ ’ (2 History of the Pleas of the Crown, p. 149).
In our own land in colonial times its intemperate, oppressive and often deliberately designed misuse was widespread and commonplace. The resultant indignities and inconveniences visited upon the peoples, in violation of their elementary rights, aroused bitter resentment and forceful opposition. The Virginia Bill of Rights, adopted May 6, 1776, provided in article 10 thereof: ‘ ‘ 10. That general warrants whereby an officer or messenger may be commanded to search suspected places for evidence of a fact committed * * * are grievous and oppressive, and ought not to be granted.” To like effect see Proceedings of the Town of Boston for October-November, 1772.
The drafters of the Fourth Amendment to the United States Constitution, mindful of the People’s historic grievances, provided in it safety factors against any unjust and improper use of the search warrant by assuring immunity from a search unless the warrant was based on probable cause supported by oath. *405 (To the identical effect is a similar provision in the New York State Constitution, section 12 of article I.)
However, the search warrant was not outlawed nor its use otherwise interdicted. The Fourth Amendment protects against ‘ ‘ unreasonable governmental intrusion ’ ’ into the privacy of a person’s home (Silverman v. United States, 365 U. S. 505, 511; so, also, Harris v. United States, 331 U. S. 145, 150).
Judge Cardozo noted that: “ The immunity is not from all search and seizure, but from search and seizure unreasonable in the light of common-law traditions ” (People v. Chiagles, 237 N. Y. 193,195).
The claim of lack of probable cause now urged on us is one that has often been put forth and now, as heretofore, must be determined on the facts of the instant case. Courts, ever mindful of the historic compulsions leading to the enactment of the Fourth Amendment, always subject such pleas of lack of reasonable grounds to careful scrutiny in the light of the definition of probable cause, which exists when the affiant has reasonable grounds at the time of his affidavit for the belief that the law is being violated (Dumbra v. United States, 268 U. S. 435). This means less than evidence that would justify condemnation or conviction, but does require that the facts and circumstances be within the officers’ knowledge or of which they had reasonably trustworthy information sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed (Brinegar v. United States, 338 U. S. 160; Carroll v. United States, 267 U. S. 132; Stacey v. Emery, 97 U. S. 642); but an affidavit based on mere belief or suspicion is inadequate (Nathanson v. United States, 290 U. S. 41). However, hearsay is of considerable relevance; “ [a]n affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented ” (Jones v. United States, 362 U. S. 257, 269). This is the meaning and sense of probable cause.
We are also aware that the affidavit in support of the search warrant is usually drawn by a law-enforcement officer familiar with the many faces of crime, aware of the devious and furtive ways of the felon, but not generally conversant with legal niceties. The language they employ is that of the ordinary, reasonable and prudent everyday citizen, not that of the polished legal technician. This too must therefore be considered when weighing the affidavit for reasonable ground.
To require of a law-enforcement officer technically impeccable legal terminology, not usually used by the everyday citizen, would hamper and delay conscientious law-enforcement efforts *406 and oftentimes render carefully planned investigative efforts futile.
The unreasonable glorification of mere legal semantics is hardly conducive to that measure of protection which our citizens are entitled to against demonstrated criminality.
In United States v. Heitner (149 F. 2d 105,106 [C. C. A. 2d]) Judge Learned Hand said: “It is well settled that an arrest may be made upon hearsay evidence; and indeed, the ‘ reasonable cause ’ necessary to support an arrest cannot demand the same strictness of proof as the accused’s guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties.”
In Brinegar (338 U. S. 160, 175, supra) it was stated: “In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.” And further, at page 176, the court said: “ These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community’s protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. 'To allow less would be to leave law-abiding citizens at the mercy of the officers’ whim or caprice.”
Coming now to a consideration of the affidavit complained of herein, we note that it sets forth that the affiant officer had received information from a confidential informant, who in the past had supplied him with accurate and reliable information upon which the officer had acted; further, that the informant had witnessed bets given to the defendant and that in addition to the above the officer had personally kept the premises under surveillance on several occasions and had observed males and females enter them in a furtive manner, remain a short time and then depart; that the defendant had previously been arrested for “ Policy Controller.” Based on the foregoing the officer was of the belief that the premises were being used by the defendants *407 in the illegal activity of policy gambling and that written records of such illegal activity were in the premises to be searched.
In the light of the test for probable cause, it appears to us that the affidavit of this working police officer, expert in his field, showed sufficient factual material and reasonable probabilities to warrant the issuing Magistrate to reasonably conclude and judicially determine that there was probable cause for a belief by the officer that an offense had been or was being committed.
Nor do we find substance in any of the other points advanced. Defendant urges that it was improper to return the search warrant to a Magistrate other than the one who issued it. However, in a similar situation, where a warrant issued by the Commissioner of the Northern Division of the Eastern District of Tennessee was returned to the Commissioner of the Northeastern Division of the Eastern District of Tennessee, the United States Circuit Court of Appeals in Evans v. United States (242 F. 2d 534, 536) found no merit in the contention that the return was improperly made and stated: “ Moreover, the return of a search warrant is a ministerial act and any failure therein does not void the warrant. Rose v. United States, 6 Cir., 274 F. 245.”
In any event, the warrant before us expressly provided that it could be returned to the issuing Magistrate or any other Magistrate in the county. (See, also, N. Y. City Crim. Cts. Act, § 104.)
Appellant also urges that his constitutional rights were violated when the felony charge originally placed against him (Penal Law, § 974-a) was dismissed and the charges reduced to misdemeanor violations (Penal Law, §§ 974, 975). In this respect section 102-e of the New York City Criminal Courts Act specifically conferred authority upon the Magistrate having jurisdiction under the conditions herein to reduce a felony charge to a misdemeanor. The complaint lodged against this appellant informed him of the allegations against him and thus sufficiently enabled him to prepare to meet them; nor were his rights otherwise violated by compelling him to forego a jury trial. The New York State Constitution expressly authorizes trials without juries on misdemeanor charges under these circumstances (People v. Williams, 10 N Y 2d 382).
The record amply demonstrates that the People proved a prima facie case. In addition to the physical evidence seized in defendant’s apartment in his presence, in reply to the arresting-officer’s questions, the defendant stated that he received $90 per week for this work and that he carefully checked the ribbons *408 brought to him for arithmetical errors. Appellant’s guilt was established beyond a reasonable doubt. (People v. Eskjian, 281 App. Div. 751; Millea v. City of New York, 25 Misc 2d 369, 372; People v. Atlas, 183 App. Div. 595, affd. 230 N. Y. 629.)
In the light of the number of convictions previously had by this defendant, the sentence imposed was not excessive. The judgment of conviction should be affirmed.
Gulotta and Eilpebih, JJ., concur.
Judgment affirmed.