M. Michael Potoiceb, J.
By this motion the defendant seeks an order vacating and setting aside a search, warrant issued on August 11, 1971, and suppressing the evidence seized pursuant to that warrant. The evidence seized consists of narcotics and instruments to process same.
The challenged search warrant directs a ‘ ‘ search of the 3rd floor, at 427 Willoughby Avenue, Brooklyn, occupied iby J. D. Lopez, male white, Pr 40 years, 66 in. 120 lbs., black hair and J. D. Glads, female white, Pr 65 in., 21 years, 120 lbs. and their person and of any other person who may be found to have such property in Ms possession or under Ms control or to whom such property may have been delivered, for narcotics and cocaine and heroin and also paraphernalia used in the cutting and packaging of narcotics. ”
In support of his application for the issuance of warrant, Police Officer Pinder stated under oath that he had been furnished information by a confidential informant known to Mm and registered in the Narcotics 'Division of the New York City Police Department. The informant had proved reliable to Mm in the past in that his co-operation had led to the arrest of 25 persons for violations of the narcotics laws, seven of whom were made by affiant, and that at least one of said persons arrested was subsequently convicted as of August 11, 1971, and that dispositions were then pending as to the others arrested. His informant told him that he was present on .several occasions in the apartment located on the third floor of the premises which is occupied by a male named Lopez and a female named Glads. He' described the persons as to age, color, height and weight. That on those occasions when he visited the apartment, he observed the described persons cutting and otherwise processing for sale heroin and cocaine and selling their products to persons who came to the apartment. Armed with tMs information, affiant made his own observations on six days preceding the execution of the warrant and at which times he saw persons knock on the door of the apartment, ask for Lopez or Glads, door was opened, money passed through the door and small packets, mostly glassine, would be passed out. The officer also requested that the warrant be indorsed for nighttime service and that it be executed without prior announcement of purpose because of the danger of injury and the easily disposable nature of the contraband.
On August 12, 1971, the day after the warrant was issued, it was executed against the specified premises. The items seized *267 were found by the police officer under a bed in the bedroom which he claims was occupied by defendant land in her presence. Nothing was seized from defendant’s person.
Detective Finder testified that the information supplied to him in the past by this informer resulted in the arrest of others. The detective was familar with those arrested as a result of tips supplied by the informer because he was on the narcotics detail in the area for two years. He saw those defendants arrested in the precinct and one was convicted as of the time of the arrest of this defendant in August, 1971.
He also testified to his own observations on sis occasions during one week preceding and including the time and date of arrest of defendant, while secreted in different areas of the premises in question (stairway leading to third floor, a bathroom located in the hallway of the floor, and a ladder to the roof), and from which he was afole to observe persons engaged in conversation and in the making of purchases of narcotics from occupants of said apartment, including this defendant.
On date of arrest Detective Finder and his fellow officer, stationing themselves on or near the third floor, observed persons holding conversations with, and handing over money to, persons in the apartment and in return receiving little packets, mostly glassine envelopes. The door of the apartment was opened on each occasion about three inches, and from his vantage point Detective Finder claims to have been able to make his observations and hear the conversations.
When the arresting officers entered the apartment, ithey found the defendant and one other person there, whereupon.both then rían in different directions of the apartment. The officer described the apartment in detail and that it was the only one on the third floor; a bathroom with a separate entrance was located in the hallway; a kitchen door facing the hallway was closed, blocked by a refrigerator placed against said door; other rooms included a combination living room and bedroom, and a bedroom. There were no doors in the apartment between the rooms except for a plywood divider on the doorway of the combination living-room-bedroom. The patrolman relied upon his informer that the apartment was occupied by defendant and one Lopez, who was not present on the date of the arrest; that the informer also gave him a description of the people in the apartment.
Whenever he visited the premises, he found that only one apartment was occupied in the building, that being the one on the third floor j the first floor was vacant and its windows were *268 broken; he never saw anybody on the second floor; and believed it to have been .an abandoned building.
Defendant’s sister testified that at the time in question she and her family occupied an apartment on the second floor; that the defendant occupied one bedroom on the .third floor; that one other male person resided on the first floor and two other males on the same floor as her sister. She stated that defendant used the kitchen entrance to reach her bedroom; that the bathroom was located in the kitchen and not outside in the hallway; she does not recall where the refrigerator was located, although she visited with her sister almost every day.
Detective McElligott corroborated Detective Binder’s testimony as to the observations made preceding’ entry into’the apartment and that as they entered the apartment, he observed defendant running into the kitchen, while the other prson ran into another room; and that the other person arrested did not occupy the bedroom in which the contraband was found.
He acknowledges that he failed to file the inventory sheet and the return of the warrant with the court required by law and standard police procedure. He attributes this failure to the fact that three or four days (after the arrest he was transferred to another command in Manhattan and he was soon thereafter stricken with illness which kept him away from his police duties for about three months. Detective Binder, .under the impression that the warrant' was returned by Detective McElligott, also neglected to file it.
Detective McElligott did voucher the seized property with the Property Glerk of the Police Department and submitted it to the lab for analysis.
The court accepts testimony given by the two law enforcement officers as credible.
Defendant’s motion to controvert and suppress is based upon the following:
1. Perjurious testimony of police officers.
The court, on reviewing the entire record, finds their testimony believeable.
2. There was no probable cause for the issuance of a search warrant.
The court finds that .such probable cause did exist, based on the detailed information given by the informant, and the reliability of his information is established by the affiant’s statement that the informant .was known to him and has in the past furnished information leading to arrests, and at least one convic *269 tion as of the time the warrant was issued (see, e.g., People v. Rogers, 15 N Y 2d 422, 424).
The reliability of his information was further corroborated by the observations of the affiant which took place on six consecutive days immediately preceding the application for the warrant and the affiant observed the traffic on the .third floor .and the handing over of the small packets, and overheard the conversations ¡between the alleged purchasers and sellers.
The contents of this affidavit fully meet any test that might be applied (People v. Malinsky, 15 N Y 2d 86; Aguilar v. Texas, 378 U. S. 108; Spinelli v. United States, 393 U. S. 410; and United States v. Bailey, 458 F. 2d 408).
3. No knowledge or verification as to who rented or occupied the apartment.
Information furnished by the informer plus observations made by police officers and statements by defendant at time of arrest that it was her ¡apartment satisfy this issue for this motion.
4. Defendant claims there was no danger of injury justifying the search warrant to be executed without prior announcement of purpose or authorization.
A search warrant may be executed without giving notice of authority (¡OPL 690.50, subd. 2 [no-knock clause]).
The basis for the inclusion of such a clause in ¡a warrant must be based on CPL 690.35 (subd. 3, par. [b], cl. [i] or cl. [ii] ). The property sought may be easily and quickly destroyed or disposed of or the giving of such notice may endanger the life or safety of the executing police officer or another person.
The officer testified that the contraband was heroin, to the easily disposable nature of such contraband, and of the possibility of danger to the officers involved when a warrant of this nature is executed.
The testimony meets both prongs of ¡OPL 690.35 (subd. 3, par. Db]).
5. Assuming, arguendo, it was one apartment, in whose room was contraband seized?
From the testimony of the police officers and based upon information obtained from the reliable informer who frequently visited the apartment, the conclusion can be reached that the apartment was shared by the defendant and one Lopez (who was not there at time of execution of warrant and not arrested). Actually, this is a question for trial determination and is not essential to the validity of the .search warrant or of the search.
*270 6. Defendant argues that the warrant designating the third floor to be searched does not specify with sufficient particularity the premises to be searched.
Based upon the information provided by the police informant and upon the observations of the police, there was only, one apartment on the third floor and it was occupied by “ Lopez ” and •“ Glads. ” No indication could be drawn of another apartment on that floor either from the information of the informant or from their own observations. The discovery after entry into the third floor apartment by the police of a partitioned section of the apartment forming another room for .C'ruz, does not vitiate the original specificity of the warrant. The contraband which is the subject matter of this case, was not found in the partitioned-off section of the apartment, but in that part apparently occupied by the defendant.
“ It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.” (People v. Mongno, 67 Misc 2d 815, 817.)
Even if we were to consider the ‘‘ third floor ’ ’ designation an error in the description of the premises, such technical errors will not invalidate the warrant if: (a) the premises can be identified with reasonable effort, and (b) 'there is no reasonable probability that a search may be made of premises other than the one intended to be searched under the warrant (People v. Mongno, supra).
Considering all of the above facts, the warrant’s designation of the ‘ ‘ third floor ’ ’ was sufficient to provide the officers with ‘ ‘ certainty ’ ’ in the identification of the premises to be searched.
7. The defendant also urges upon the court that the search warrant should be controverted because of the failure of the police officer to return the warrant pursuant to GPL 690.30 (.subd. 1), GPL 690.45 (subd. 7) and GPL '690.50 (subd. 5), which provide that:
“ § 690.30 Search warrants; when executable.
“ 1. A search warrant must be executed not more than ten days after the date of issuance and it must thereafter be returned to ■the court without unnecessary delay. ”
‘ ‘ § 690.45 'Search warrants; form and content.
A search warrant must contain: * * *
“ 7. A direction that the warrant and any property seized pursuant thereto be returned and delivered to the court without unnecessary delay.”
‘ ‘ § 690.50 Search warrants; execution thereof. * * *
*271 “ 5. Upon seizing property pursuant to a search warrant, a police officer must without unnecessary delay return to the court the warrant and the property, ,and must file therewith a written inventory of such property, subscribed and sworn to by such officer. ’ ’
. From the testimony of1 the police officers it is apparent that there was never a return filed on this search warrant, nor was a written inventory of the items seized filed with the court.
Despite the use of the word “must” in this statute (CPL 690.50, subd. 5), the prevailing rule in this State would indicate that this paragraph is to be considered merely ministerial when considering the validity of the search warrant as a -whole, and errors in carrying out such ministerial duties by the police should tiot be used to invalidate an otherwise valid warrant.
Any failure of a police officer to comply with ministerial duties in connection with a return and inventory will not invalidate a search (People v. Jenkins, 71 Misc 2d 938).
Filing of a return is ministerial and a failure or irregularity in doing so is not fatal (People v. Rubicco, 30 N Y 2d 897; People v. Massey, 38 Misc 2d 403).
The Federal courts, plus courts of other State jurisdictions, appear to agree with this line -of thought.
The return is a ministerial act and any failure therein does not void the warrant (Evans v. United States, 242 F. 2d 534; Rose v. United States, 274 F. 245; United States v. Moore, 452 F. 2d 569; United States v. Wilson, 451 F. 2d 209; Lewis v. State, 126 Ga. App. 123; State v. Featherstone, 246 So. 2d 597 [Fla.]).
Failure of the officer to give a copy of the warrant to the defendant at the time of the search and failure to file the inventory does not invalidate the search and make the evidence seized inadmissible. (United States v. Gaitan, 4 F. 2d 848.)
Return and inventory under a search warrant are ministerial acts -and any failure therein does not void the warrant (United States v. Baldwin, 46 F. R. D. 63).
After considering these cases, what is important in any search warrant case is .that the items taken at the time of the search are those which are produced in court without anything added thereto before trial. If the police had met the standards laid out in the statute there would be no problem. But this court 'believes that since the return and inventory are ministerial in nature, and a defect in them should not be fatal to an otherwise valid search, then the People should be given an opportunity to explain the failure to return the warrant and to cure such ministerial defect.
*272 The court accepts the testimony of the police as to the reason for failure to make a return and also accepts the list of items submitted for laboratory analysis as evidence of what was seized at the 'time of the search.
Therefore this court finds the search warrant and its subsequent execution to be valid, and denies the motion to suppress the contraband seized in the search.